H. MARSHALL & COMPANY, plaintiffs in error, *vs.* WILLIAM W. JOHNSON, defendant in error.

1. Error being assigned upon a refusal of the Court below to grant injunction in an equity case pending, if it appear that certain affidavits and letters, which were before that Court, as evidence, have not been set forth in the bill of exceptions, nor attached to it as exhibits, but have been copied, by the Clerk, into the transcript, these will be rejected by this Court as irregularly brought up. But if it appear from the bill and answer that the promovant was entitled to the injunction asked, the case will not be dismissed for this irregularity.
2. Equity will enjoin one of several partners in a business enterprise, who by the partnership contract, has undertaken to superintend and manage the business, from carrying on the same business, at the same place, in a separate establishment, for his sole benefit, even though there be no express covenant restraining him from so doing.

When this case was called in its order for a hearing, counsel for the defendant moved to dismiss the writ of error, on the ground that the bill of exceptions itself furnished evidence, that it did not contain all the evidence necessary to a clear understanding of the errors complained of.

The motion was predicated upon the following statement of facts, viz :

The decision excepted to was made upon an application for an injunction. The evidence before the Judge consisted of the bill, and the answer, together with various affidavits produced both by complainant and defendant, and also some letters offered by complainant. These affidavits are alluded to in the bill of exceptions, and the Judge in his certificate directs the Clerk to certify and send up a transcript of the record, "including the affidavits," without identifying them in any manner whatever. The Clerk sent up with the transcript of the record copies of several affidavits, but there was no competent evidence identifying them as the affidavits which were before the Judge at the time he decided the application for an injunction.

A. W. HAMMOND & SON, for the motion.

HAMMOND & HOYT, *contra.*

Marshall & Company *vs.* Johnson.

In Equity from Fulton Superior Court. Decision made by Judge BULL, at Chambers, on the 5th of May, 1863.

This was an application for injunction, based upon the facts and circumstances following, viz :

H. Marshall & Co. were engaged in the manufacture, in the city of Atlanta, Georgia, of swords and sabres, for the Government of the Confederate States. In this work the proprietors needed a considerable quantity of brass castings, which it was somewhat difficult to procure. William W. Johnson owned and possessed a quantity of a peculiar kind of clay suitable for making the pots and crucibles necessary to be used in carrying on the operations of a brass foundry, and was also skilled in the practical business of such a foundry. On the first day of June, 1862, the parties entered into a written contract, of which the following is a copy, that is to say :

"Memorandum of agreement made this the first day of June, 1862, between H. Marshall & Co., of Atlanta, and State of Georgia, of the one part, and William W. Johnson, of the same place, of the other part. Whereas, the said W. W. Johnson agrees to take the superintendence of the brass foundry, (known and recognized under the style of Marshall and Johnson) on the following terms: The said H. Marshall & Co. to provide the buildings for carrying on the said foundry, (with suitable furnaces and flasks,) free of rent. The said W. W. Johnson to provide free of costs all crucibles and pots for the melting of the brass, and to give all necessary attention to the management of said foundry. All fuel, stock, and everything connected with the working expenses of the foundry, wages, etc., to be provided and paid at the joint expense of both the said parties. The nett amount of profits of said foundry, after deducting all expenses, shall, once in six months, be divided between said parties in equal shares ; and all losses shall be borne in like manner. All work required by said H. Marshall & Co. to take precedence of all other work. All business of every sort and kind con-

nected with said foundry to be properly reported to the office of H. Marshall & Co. This article of agreement to continue in full force for two years, unless dissolved by mutual consent.          "H. MARSHALL & CO. [SEAL.]
          "W. W. JOHNSON.     [SEAL]."

Under this contract, Marshall & Co. furnished the necessary buildings with a furnace and flasks, and Johnson provided crucibles and pots, and a foundry was put in operation, the business of which yielded for a time a nett income of $2,000 per month. Johnson seemed then to become dissatisfied with the partnership, and began to neglect its affairs, concealed the clay out of which the pots and crucibles were made, and conceived the project of establishing another and a rival foundry in the city of Atlanta, on his own account and for his individual benefit. He alleged that the concern was too small to employ all his time, attention and capital. Marshall & Co. proposed to increase the number of furnaces, and enlarge the business of the partnership, the buildings being ample for that purpose; but Johnson dissented, and proceeded to rent a building, and to take other steps to put his own foundry in operation. Marshall & Co. then exhibited their bill in equity against Johnson, in which they allege the facts before stated, and pray an *injunction* restraining him from erecting and putting in operation the foundry for his individual benefit.

The presiding Judge granted a rule *nisi* calling on Johnson to show cause why the injunction should not issue as prayed for in the bill.

The defendant filed his answer to the bill, in which the material allegations of the bill are admitted, and an effort made to excuse and justify his conduct.

Upon hearing the rule, the Judge discharged it, and refused the injunction; and that decision is complained of as error.

HAMMOND & HOYT, for plaintiff in error.

A. W. HAMMOND & SON, *contra*.

Marshall & Company *vs.* Johnson.

*By the Court.*—JENKINS, J. delivering the opinion.

When this case was called for trial, counsel for defendant in error moved to dismiss the appeal, for the reasons appearing in the statement. Counsel for plaintiff in error did not waive the evidence alleged in that motion to have come irregularly before this Court, but insisted that it was regularly here, and that he had a right to use it.

Before entering upon the argument of the motion to dismiss, counsel on both sides agreed to argue the motion and the bill of exceptions together—thus presenting at once to the view of the Court the alleged irregularity, and the merits of the case. Had the former been urged separately, thereby precluding a consideration of the bill and answer, for the reasons assigned in Callaway vs. Hopkins, decided at the present term, (to which reference is here made,) we must inevitably have sustained defendant's motion. But the course pursued brought under review the merits of the case as presented by the bill and answer, which were read, and which, *ex concessis,* were properly brought up. Then arose the question, whether or not there be enough alleged in the bill and admitted in the answer to entitle the plaintiff in error to the relief sought and denied by the Court below. If this question be answered affirmatively, why dismiss him from this Court for having irregularly brought here, in the form of letters and *ex parte* affidavits of strangers to the record, evidence not at all material to his case? Under such circumstances, how can the defendant be prejudiced by the irregular presentation of immaterial evidence? The complainant was under no obligation to substantiate by *aliunde* evidence what was alleged in the bill, and admitted in the answer ; nor was it competent for the defendant to controvert allegations so made and admitted. If the bill and answer (unaided by *aliunde* evidence,) disclose such equity as entitled the complainant to the relief sought, there was error in refusing it. If not, defendant in error will gain more than he could take by the allowance of his motion, viz: a judgment in his favor on the merits. Putting aside, therefore,

all affidavits, letters, etc., alleged to have been irregularly brought before us, we proceed to consider the case solely upon the bill and answer.

The material facts thus established are these : On the 1st June, 1862, the parties entered into an agreement (set forth in the statement) to establish and operate, for two years, in copartnership, in the city of Atlanta, a brass foundry ; each party being bound to do certain things, and being entitled to half the profits. Among other things, it was stipulated that the defendant in error shall give all necessary attention to the superintendence and management of said foundry.

Each party so far performed his undertakings that the foundry was actually put into operation, and so conducted until April, 1863, (when this litigation arose,) that both allege a wish and purpose to continue the business during the full term stipulated. But about the time specified, it was discovered that defendant in error, without consulting his partners, was about to establish in Atlanta, on his individual account, another brass foundry, which, it is alleged, must necessarily come in competition with the joint enterprise. This is the grievance of which plaintiff in error complains, and the prayer is that the defendant be enjoined from so doing. A rule *nisi* was granted, requiring the defendant to show cause why the injunction should not issue. By way of showing cause, defendant filed his answer to the bill, and, after argument, the rule was discharged, and the injunction refused ; and to this ruling exception is taken. There are other mutual altercations between the parties, but they appertain rather to the final hearing, than to the rule *nisi.*

These are the grounds upon which the defendant resists the prayer for injunction, viz: that he is not restricted by the articles of partnership from carrying on for his sole benefit, in a separate establishment, the same business, at the same locality ; that the limited operations of joint foundry are insufficient to occupy his time, and that there is at Atlanta abundant demand for brass castings to furnish employment for both foundries. On the other side, it is replied, that

the articles of partnership do not limit the extent of the joint operations by specifying either the amount of capital or the number of furnaces to be employed. They stipulate that H. Marshall & Co. " shall provide the buildings for carrying on said foundry, with suitable furnaces and flasks, free of rent ;" that the said W. W. Johnson shall " provide, free of cost, all crucibles and pots for melting the brass, and give all necessary attention to the management of said foundry." Further, it is replied, that H. Marshall & Co., since the foundry went into operation, have actually enlarged the building and increased the number of furnaces, etc., and have proposed still further to multiply them, in order to meet the demands upon the foundry, which proposition the defendant has declined.

The facts having been ascertained, our inquiry is whether or not the intended proceeding of the defendant is inconsistent with the rights accruing to his partners from the articles.

The silence of those articles regarding the extent of the joint operations is suggestive of an understanding, that it was to be regulated by the demand for brass castings at the point of location, and the means of the parties, severally, to furnish their stipulated contributions. The demand increasing, had Johnson required of Marshall & Co. additional furnaces, flasks, etc., to meet it, a reply in good faith, that they were without means to furnish more, would probably have exonerated them. So, on the other hand, had *they*, with a like increasing demand, offered to increase the number of furnaces, etc., and required of Johnson a corresponding increase of crucibles, etc., an insufficiency of clay to justify such increase, and his inability to procure more, would have excused his non-compliance. The facts of the case, however develop a demand beyond the producing capacity of the foundry, the ability and willingness of Marshall & Co., on their part, to increase that capacity, and the ability and refusal of Johnson, on his part, to do so. We are not called on to say whether, had this been the whole case, equity would have compelled Johnson, upon the application of Marshall & Co., to bring forward his contribu-

tion and enlarge the joint operations, or whether it would have left them to unavailing regret for having omitted to provide in the articles for this contingency.

The gravamen of the Marshalls' complaint goes much beyond that. It is not simply that Johnson, having the means, refuses to increase the capacity of the joint foundry, but that, in the face of that refusal, he proposes to employ his surplus means in the operation, for his sole benefit, of an independent rival establishment. Nor is this all. They show that, by the articles of partnership, he is bound, during its continuance, to superintend and manage its operations, and may claim this power, as his exclusive prerogative. To this function appertains the acceptance or rejection of orders for castings, and the fixing of prices.

If then, the joint foundry is to be operated under the exclusive management of Johnson, and alongside of it another of which he is the sole proprietor and manager, what is the predicament of the partners in the former. All orders for castings must go to Johnson. Of these some will be more, others less desirable, yet with Johnson alone would rest the distribution of them between the two. But suppose the parties giving orders should select the place where they should be filled, what elements would enter into their choice? Comparative prices and comparative qualities of castings produced by the rival establishments; yet these, in both, would depend upon the volition of Johnson. Would he be likely to maintain between the two, one of which rendered him half its profits, and the other the whole, a position of strict impartiality? Under the circumstances, will equity hold one man, against his will, to trust another, to this extent.

Had the separate enterprise contemplated by Johnson pre-existed, Marshalls would not have had the same inducement to embark in a joint rival one. It is not conceivable that they would have done so, giving to Johnson the ample power he derives from the present articles. If not, shall he now be permitted, after entering into the agreement, and after the investment under it, to abstract a large portion of

Marshall & Company *vs.* Johnson.

the inducement influencing his partners—to change so materially his relation to the joint business ?    In the inception it was his interest that·all possible prosperity should attend that adventure ; and herein was the security of his partners. Henceforth, if not arrested in his plans, his interest will be that *it* shall foster, and eventually give place to a new and single one set up by himself.    He claims the right to have his time fully occupied, and avers that it is not so.    To this there are two replies : first, that he may enlarge the joint foundry so as to occupy his time ; secondly, giving to the partnership business all necessary time, he may employ the surplus in any way not prejudicial to it.    But this is very different from employing his time and means in rivalry with it, and making himself the potent arbiter in that rivalry. It has been argued that the contract of partnership as construed thus to restrain the defendant is in restraint of trade, and therefore illegal and void.    We are at a loss to apply this proposition to the case, unless it be intended, that the competition resulting from two independent foundries would benefit dealers in their castings.    If so, then all partnerships are illegal, because they prevent competition between the individuals composing them.    The citation of Holmes vs. Martin, (10th Georgia, 505,) is unfortunate for the position. There this Court held, that "the distinction was early taken, and is established by an unbroken current of authorities, English and American, between such stipulations as are in general restraint of trade, and such as are in restraint of it only as to particular places and persons, or for a limited time.    The latter, if founded upon good and valuable consideration, are valid, while the former are universally prohibited."    It is a well established rule, that equity will interpose to restrain one partner from doing acts prejudicial to the interest of the others.    Story's Equity Jurisdiction, section 669.

" Courts of equity will go further in cases of this sort, and restrain the partner from carrying on any trade or business which is inconsistent with the rights and interests of the partnership ; for the principles of equity will not permit ,

parties bound to each other, by an express or implied contract, to promote an undertaking for the common benefit, should any of them engage in another concern, which necessarily gives them a direct interest adverse to that undertaking." Story on Partnership, section 178 ; Glassington vs. Thwaites, 1 Sim. & Stu., 124–123 ; Burton vs. Wookey, 6 Madd. R., 367.

We do not say that under all circumstances equity would restrain one partner from carrying on the same business at the same place for his individual benefit. It is of the very essence and spirit of equity jurisprudence, in the application of its benign principles, to scrutinize closely the circumstances of each case. Should a case arise wherein it was manifest that such a proceeding, by one partner, did not prejudice the interest of the others, in the absence of express contract prohibiting it, equity would not interpose. But in the case at bar, the position in the business given to Johnson by the articles—the power conferred on him for weal or woe, and the corresponding obligation assumed by him, as effectually preclude him from setting up a private, rival establishment, as would a distinct restrictive covenant.

We therefore think there was error in refusing the injunction.

Let the judgment be reversed.