REBER *v.* PEARSON.

PARTNERSHIP—AGREEMENTS—BREACH—INJUNCTION.

> Complainants and defendant were engaged in a competing business, and, for the purpose of avoiding such competition, entered into a partnership agreement for a period of five years. The agreement provided that each partner should give his undivided time and attention to the business; that none of the partners should do any act by which the interest of the firm would be imperiled or prejudiced; and that, on terms specified, complainants might purchase the interest of defendant. Subsequently the parties entered into agreements for a sale to complainants of defendant's interest, and it was agreed that, on complainants' failure to make payments as provided by such agreement, the sale should be canceled, and defendant charged with the payments made as money advanced from the firm, and he should resume his position as partner under the original agreement; and that the original agreement should remain in force except as expressly modified in the later agreement. Before the end of the term, defendant entered into a competing business, and complainants filed a bill to enjoin it. *Held,* that the agreements should be considered as a whole, and that under their terms complainants were entitled to the relief prayed.

Appeal from Newaygo; Palmer, J. Submitted January 12, 1909. (Docket No. 65.) Decided March 3, 1909.

Bill by Walter F. Reber and Aaron P. Reber to enjoin Wesley W. Pearson from engaging in business in violation of a partnership agreement. From a decree dismissing the bill, complainants appeal. Reversed, and decree entered for complainants.

*John G. Anderson* (*Hatch & Raymond,* of counsel), for complainants.

*E. L. Brooks* (*George Luton,* of counsel), for defendant.

155 MICH.—38.

MOORE, J.   The bill in this case was filed for the purpose of enjoining the defendant from engaging in a mercantile business in the village of Fremont, Newaygo county, in violation of a partership agreement entered into between him and the complainants.   The bill of complaint was dismissed in the lower court, and the case is brought here by appeal.

The case calls for the construction of a partnership agreement and the agreements contained in two subsequent papers.   On the 11th day of January, 1905, Wesley W. Pearson was engaged in the general mercantile business in the village of Fremont, and Walter F. Reber and Aaron P. Reber, doing business under the name of Reber Bros., were also engaged there in the general mercantile business; their stores being on the opposite sides of the main street.   On that day these men entered into an agreement for the formation of a partnership composed of said parties for the purpose of carrying on a general mercantile business in the village of Fremont under the name of W. W. Pearson & Reber Bros., said partnership to continue for a period of five years.   The agreement in the main was in the usual form of partnership agreements.   In the 9th paragraph it was agreed:

"Each of said partners is to give his undivided time and attention to said business, and is to use his utmost endeavors to promote the interests of said firm and is to use his best endeavors to bring to this firm the good will and patronage of the firms with which they are now connected."

The 12th paragraph provides for the manner of the division of profits and payment of salaries.   Paragraph 13 provides that none of said partners shall "knowingly do any act by which the interest of said partnership shall be imperiled or prejudiced."   The 15th paragraph of said partnership agreement provides that said Walter F. Reber and Aaron P. Reber may purchase the interest of said Wesley W. Pearson at any time by paying to Pearson the amount of his interest in the firm, such interest to

be ascertained in the same manner as provided for the annual inventory and accounting.

"In such event said Wesley W. Pearson agrees to execute and deliver to the remaining partners all necessary conveyances of such interest."

In pursuance of the agreement just quoted, the parties on the 5th day of June, 1905, entered into an agreement whereby Wesley W. Pearson agreed to sell, and the Rebers agreed to purchase, the interest of Mr. Pearson in the partnership business. This agreement was followed by a third one on the 12th day of March, 1907. In both of the last-named agreements is to be found language of the same import which, so far as it is important, reads as follows:

"Memorandum of agreement, made and entered into this 12th day of March, A. D. 1907, by and between Wesley W. Pearson, party of the first part, and Walter F. Reber and Aaron P. Reber, parties of the second part, witnesseth: Whereas the above-named parties are at present engaged in business in the village of Fremont, Michigan, as copartners under a certain agreement in writing, dated January 11th, 1905. And, whereas the said parties on the fifth day of June, A. D. 1905, entered into an agreement in writing for the purchase and sale of the interest of said party of the first part in said copartnership, and said last-mentioned agreement is canceled and this agreement is substituted therefor. And whereas, the said parties of the second part have proposed to buy out the interest of the said party of the first part in said copartnership, which is at this time of the amount of eight thousand one hundred and seventy-four and $\frac{78}{100}$ dollars, and said party of the first part has agreed to sell to said parties of the second part his said interest if the conditions hereinafter stated are complied with. It is hereby agreed that if the said parties of the second part shall pay, or cause to be paid, to said party of the first part the said sum of eight thousand one hundred seventy-four and $\frac{78}{100}$ dollars in monthly installments of two hundred and fifty dollars each, payable on or before the first day of each month beginning on the first day of May, A. D. 1907, until the full sum of three thousand one hundred and seventy-four and $\frac{78}{100}$

dollars is paid, and the sum of five thousand dollars on or before the 11th day of January, A. D. 1910, all with interest at the rate of seven per cent. per annum, payable annually, which said obligations are evidenced by twelve promissory notes of two hundred and fifty dollars each, one promissory note for one hundred seventy-four and $\frac{48}{100}$ dollars, all dated March 12th, 1907, and one promissory note for five thousand dollars, dated June 1st, 1905, the said party of the first part will upon the completion of such payments release all his right, title and interest in and to said copartnership and the property thereof, to said parties of the second part, and in consideration of the payments aforesaid being made as aforesaid said party of the first part waives all right to share in the profits of said copartnership under said copartnership agreement, the interest mentioned in the seventh paragraph thereof and the allowance provided for in the twelfth paragraph thereof.    It is further agreed that if for any reason said parties of the second part shall fail to make the payments, or any of them, as aforesaid, the said party of the first part may, at his option, cancel this agreement, and upon notice thereof to said parties of the second part and the return and cancellation of said promissory notes then unpaid, the said copartnership shall thereupon continue as it has heretofore under said original copartnership agreement, and in that case any payments heretofore made under said contract hereby canceled and also under and by virtue of this agreement shall be charged to said party of the first part as money drawn out of the business.    It is hereby expressly understood and agreed, that the said copartnership agreement shall remain in force in every particular except as herein modified, and that the rights and liabilities of the said party of the first part as a partner shall continue as heretofore, except as herein expressly changed, and that he shall have access to the books of said copartnership as heretofore, and shall be furnished with monthly statements showing the true condition of the business of said copartnership, and except that said party of the first part shall, during the continuance of this agreement, have no voice in the management of the business of said copartnership, except to see that the terms of said agreement are not violated, and shall not be obliged to give any of his time and attention to said copartnership business."

It is the claim of defendant that the original articles of partnership contemplated a sale by Mr. Pearson to the Reber Bros., that the sale was afterwards consummated, and that Mr. Pearson had a right to engage in a competing business. We quote from the brief of counsel:

" It is defendant's contention that, upon the making of the second agreement, a complete sale was made by the defendant to complainants of defendant's interest in the stock of goods; that this sale was absolute; that this sale was unconditional so far as the transfer of stock was concerned; and that the restrictions contained in this agreement were imposed merely for the protection of the defendant in the way of security for his money.   *   *   * It is elementary law that,

" ' Upon the sale of the good will of the business without more, the vendor is not precluded from setting up a precisely similar business in the vicinity. Upon the authorities, it is settled that, if the purchaser wishes to prevent this step, he must see to it that provisions to that effect are inserted in the written contract.' 20 Cyc. p. 1279.

" ' Though a retiring partner may have assigned his interest in the partnership business   *   *   * to his copartner, he may, in the absence of an express agreement to the contrary, engage in the same line of business in the same locality, and in his own name.' *Williams* v. *Farrand*, 88 Mich. 473 (14 L. R. A. 161)."

To understand what was contemplated by the parties, we should notice all the provisions contained in all the agreements. 9 Cyc. p. 579.

It is evident the parties at the outset did not think it well to continue a competing business in the small village when the original articles were entered into. One of the purposes of the partnership was to merge two competing concerns, and thus do away with competition. It is also evident that it was contemplated a sale might be made by Mr. Pearson to the Reber Bros. A sale in fact was made. The terms of that sale were expressed in the written instruments which were drawn. It is not a case of where one partner sells out his interest in the business, and the transaction is closed. Mr. Pearson did more than merely sell out his interest in the firm. He agreed, in addition to that,

" That the said copartnership agreement shall remain in force in every particular except as herein modified, and that the rights and liabilities of the said party of the first part as a partner shall continue as heretofore except as herein expressly changed," etc.

The situation is the same as though the subsequent agreements had themselves contained the provisions that Mr. Pearson would "use his utmost endeavors to promote the interests of the firm," and that he would "use his best endeavors to bring to the firm the good will and patronage" of the firm with which he had been connected, and that he would not "knowingly do any act by which the interests of said partnership shall be imperiled or prejudiced." These are the terms of the partnership agreement which Mr. Pearson agreed should remain in full force. It is the same as though he had agreed at the time of selling out that up to the end of the partnership term, which would be January 11, 1910, and all the time the partnership agreement was in force, he would use his utmost endeavors, except to give the business his personal attention, to promote the interests of the firm and to bring to the firm the good will and patronage of the firm with which he had been connected, and that he would not knowingly do any act by which the interests of the partnership should be imperiled or prejudiced.

In *Williams* v. *Farrand,* supra, cited by counsel for defendant, the contract as drawn included "the good will attendant upon the business." This clause was objected to, and was stricken out, so that that was a case where the retiring partner merely sold out his interest without any agreement whatever as to his future attitude or conduct towards the firm. Regarding this contract, the court said:

" He [the retiring partner] does not agree that the benefit derived from his connection with that business shall continue. He does not agree that the old business shall continue to have the benefit of his name, reputation, or service; nor does he guarantee the continuance of that patronage which may have been attracted by his name or

reputation.    He does not pledge a continuance of conditions."

All these things Mr. Pearson agreed the firm should continue to have, except the service.    It was to have the benefit derived from his connection with the business, the business was to continue to have the benefit of his name and reputation and his liability as a partner.    He guaranteed the continuance of that patronage which had been attracted by his name and reputation.    It is conceded by counsel for complainant that "the right to engage in business in his own name attaches to the retiring partner, and, unless expressly so agreed, there is no restraint upon that right."    But it is contended that in the case of Mr. Pearson there is "a restraint upon that right."    He cannot engage in a rival business without violating the terms of the partnership agreement which he has expressly agreed should remain in full force.

We think it follows that the continuance of the partnership agreement in force by virtue of the contract left the parties subject to the incidents of the partnership relation. Those incidents would follow from the continuance of that agreement in force.    One of those incidents is the disability of Mr. Pearson to engage in a competing business. He retained his right to inspect the books, to have monthly statements showing the condition of the business, his right to know all the secrets of the partnership, his interest as a partner in the partnership property.    Under these circumstances, we think it logically follows that he should be restrained from entering into a competing business until by the terms of the agreement it is ended.    See the following authorities: *Marshall & Co.* v. *Johnson*, 33 Ga. 500; 5 Wait's Actions and Defenses, p. 124; Parsons on Partnership (4th Ed.), §§ 54, 59, 150, 153, 168; Story on Partnership (7th Ed.), §§ 211, 212.

The decree is reversed, with costs, and relief prayed for is granted.

BLAIR, C. J., and GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.