YOUNG, C.J.
(concurring in part and dissenting in part). This case addresses the issue of whether a claimant under the public works bond act (PWBA)[1] may recover a time-price differential and attorney fees that were permitted by its contract with a subcontractor, but were unknown to both the principal contractor and its surety. MCL 129.207 of the PWBA allows claimants to recover a sum justly due for labor and materials furnished on a public project. I concur in Parts I and II of the majority opinion. As to Part III, I agree with the majority opinion that the time-price differential is recoverable under the statute, but I would hold that the attorney fee award is not integrally related to the price of the materials Wyandotte Electric Supply Company (Wyandotte) furnished, so it is not recoverable as a sum justly due within the meaning of the PWBA. Accordingly, I dissent from Part III and would reverse that portion of the holding of the Court of Appeals that permitted plaintiff to recover attorney fees. Finally, *155 while I agree with the ultimate conclusion, I also dissent from the majority’s reasoning in Part IV regarding the award of postjudgment interest. Wyan-dotte argues under MCL 600.6013(7) that the interest rate specified in its contract with Electrical Technology Systems, Inc. (ETS) applies, while defendants argue that the general interest rate in MCL 600.6013(8) controls. I disagree with the majority’s reasoning, but I nonetheless concur with the majority’s conclusion that the general interest rate under MCL 600.6013(8) applies.
I. FACTS AND PROCEDURAL HISTORY[2]
Defendant KEO & Associates, Inc. (KEO) was the principal contractor on a renovation project at the Detroit Public Library in 2009. As required under the PWBA, defendant Westfield Insurance Company (West-field) supplied a payment bond and stood as surety on the bond.
KEO subcontracted with defendant ETS to provide labor and materials for electrical work on the renovation project. ETS then subcontracted with plaintiff Wyandotte for materials and supplies, making Wyan-dotte a sub-subcontractor in relation to KEO. ETS and Wyandotte had been in an open-account agreement since 2003, and this contract also governed ETS’s purchases from Wyandotte during the library renovation. The contract specified that ETS would pay Wyan-dotte a time-price differential of 1.5% per month (18% per annum) on invoices unpaid after 30 days. This provision represented an interest rate for purchases ETS made on credit. The contract also specified that ETS would pay 33% of any unpaid balance as an *156 attorney fee if Wyandotte had to pursue collection litigation after a default.
Wyandotte submitted a quote to ETS that included the time-price differential provision. ETS accepted this quote by issuing a purchase order to Wyandotte on February 19, 2010. Wyandotte began delivering materials to ETS on March 3, 2010, and made its last delivery on September 30, 2010. Over the course of the project, ETS became increasingly behind in its payments to Wyandotte. Eventually, ETS stopped payment altogether and went out of business. Though KEO claims it paid ETS all that was owed, Wyandotte never received full payment from ETS. As required by the PWBA, Wyandotte sent notice to KEO and West-field on November 1, 2010, claiming it was owed $150,762.33 for electrical materials furnished to ETS and the time-price differential. Wyandotte filed a claim with Westfield on January 28, 2011, to recover on the payment bond. Westfield denied the claim.
Wyandotte filed a PWBA suit against ETS, KEO, and Westfield on March 14, 2011, and moved for summary disposition. The trial court granted the motion in part, holding that the bond claim was valid and that, under its contract with ETS, Wyandotte could recover both the time-price differential and attorney fees. A bench trial was held on the issue of damages. The trial court held that Wyandotte was owed a balance of $154,343.29, a time-price differential of $76,403.44, and attorney fees of $30,000. Wyandotte requested postjudgment interest under MCL 600.6013(7), which the trial court granted. The Court of Appeals affirmed this judgment in an unpublished opinion.
II. ATTORNEY FEES
MCL 129.207 of the PWBA reads as follows:
*157 A claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which payment bond is furnished under the provisions of [MCL 129.203], and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon.[3]
When contractors are not fully paid after providing labor or materials for a public project, this statute permits them to sue on the payment bond for the amount unpaid at the time the civil action is instituted. The extent of defendants’ statutory liability is the “sum justly due.”[4] As the majority opinion correctly states, the phrase “amount. . . unpaid”[5] implies a “previous expectation of payment of a certain sum.” Because the statute gives no further direction on how to calculate the sum justly due, we examine the underlying contract to determine the parties’ expectations. In this case, the open-account agreement from 2003, Wyandotte’s quote for the library project, and ETS’s purchase orders for the project collectively constitute the basis for determining Wyandotte’s contractual expectations.[6] I concur with the majority’s analysis of the time-price differential and attorney fee issues up to *158 this point and with the majority’s conclusion that the trial court properly awarded Wyandotte the time-price differential.
I dissent from the majority opinion as to its further analysis of, and conclusion regarding, the attorney fee provision. The majority holds that, merely because the attorney fee provision was part of the open-account agreement with ETS, the trial court appropriately included the attorney fee in its judgment. This approach treats the PWBA as if it creates a statutory breach of contract claim. I respectfully disagree. The statute only makes compensable the unpaid costs of labor or materials furnished. Thus, the statute limits a claimant’s recovery to the contractual terms that are related to the price of labor or materials furnished. While both the time-price differential and the attorney fee provision are listed in Wyandotte’s agreement with ETS, only the former actually relates to the cost of furnishing the materials, so the trial court should not have awarded Wyandotte an attorney fee.
I would hold that MCL 129.207 requires us to consider whether a provision of an underlying contract used to determine the expectancy of the unpaid contractor is integrally related to the cost of labor or materials furnished for the project. MCL 129.207 allows a claimant to sue on the payment bond for the amount unpaid and recover the sum justly due him. The statute defines the amount unpaid in terms of the cost of labor and materials provided on the project, stating that “[a] claimant who has furnished labor or material. . . and who has not been paid in full therefor . . . may sue on the payment bond for the amount, *159 or the balance thereof, unpaid. . . .”[7] In other words, the PWBA entitles a claimant to full payment for the labor or materials furnished; a claimant is not entitled to full damages that might otherwise be available for a breach of contract claim. Therefore, we should hold the principal contractor and surety liable for only those terms that are integrally related to the cost of labor or materials supplied, not for any and all collateral terms in the underlying contract. The majority erred by limiting its review simply to whether Wyandotte’s claimed damages were allowed by the contract.
Furthermore, the PWBA limits the claimant’s recovery based on when certain price terms are triggered. MCL 129.207 states:
A claimant who has furnished labor or material in the prosecution of the work . . . and who has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which claim is made, may sue on the payment bond for the amount, or the balance thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon. A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless . . . he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.[8]
*160 MCL 129.207 repeatedly refers to a 90-day period after supplying the last of the labor or material for which the claim is made. Based on this language, Wyandotte’s “claim is made” for labor or materials furnished for which Wyandotte “has not been paid in full therefor before the expiration of a period of 90 days after the day on which the last of the . . . material was furnished or supplied . . . .”[9] In other words, we must examine the price terms in the contract that came due by that 90-day deadline but were not paid in full, for which the claimant may then proceed against the payment bond.
Under this interpretation, Wyandotte’s claim is for the cost of materials furnished, limited to the price terms under the contract that came due by the 90-day deadline. Notably, the statute required Wyandotte to notify KEO and Westfield of its claim, “stating with substantial accuracy the amount claimed .. . .”[10] Wy-andotte is then entitled to sue “for the amount, or the balance thereof, unpaid at the time of institution of the civil action. . . ”[11] When a claimant receives partial payment between its 90-day notice and the institution of its action under the PWBA, the amount unpaid will be less than the amount originally claimed in the notice. In the present case, Wyandotte was paid nothing between its 90-day notice and the time it filed its PWBA suit, so the amount unpaid is the entire amount owed, based on the price terms in its contract with ETS that triggered by the 90-day deadline.[12]
*161 The majority claims that the plain language of the statute does not support this interpretation. However, the majority only cites a portion of the statute for this contention rather than reading the provision as a whole. The majority fails to analyze the full portion of MCL 129.207 quoted in this opinion, namely that “[a] claimant who has furnished labor or material.. . and who has not been paid in full therefor . . . may sue on the payment bond for the amount, or the balance thereof, unpaid . . . .” Thus, the statute plainly states that the claimant may only sue for the amount unpaid for labor and materials the claimant supplied, thereby limiting the claimant’s recovery to the cost of labor and materials supplied. The majority opinion is internally inconsistent because, although the majority acknowledges that Wyandotte’s claim against defendants is not a contract claim and does not arise directly out of the contract, the majority uses the entirety of the contract as a measure of Wyandotte’s damages. Instead, the PWBA instructs us to use the contract only to establish Wyandotte’s expectancy regarding the cost of labor or materials Wyandotte furnished but was not paid for.[13]
*162 The time-price differential is inextricably related to the cost of materials furnished for the library project and the provision triggered before Wyandotte gave its 90-day notice: it is a part of the price term of the agreement with ETS and the provision applied to invoices that went unpaid after 30 days. In Wyan-dotte’s contract with ETS, the time-price differential provision states, “Time price differential charges of 1V2% per month (18% per annum) are calculated on all invoices that are not paid and past due 30 days or more.” This provision created an interest rate for purchases ETS made on credit, which compensated Wyandotte for delayed payment. Wyandotte included this amount in the quote it submitted to ETS as a cost of materials. The Court of Appeals adequately explained in Price Bros Co v Charles J Rogers Constr Co why such a cost differential is closely related to the expectancy that is properly considered as the sum justly due under the PWBA:
[T]he differential is an integral part of the cost of the transaction. If the buyer pays cash, the seller receives the money immediately and no burden is placed on him. If the buyer elects to purchase on credit, the seller is burdened by the interruption to its cash flow, and so the buyer may pay a “price” for the benefit of receiving the materials without paying for them immediately.[14]
Accordingly, the time-price differential is an integral part of the sum justly due for materials Wyandotte supplied on the renovation project because it establishes an interest rate that directly relates to the price of the materials Wyandotte furnished when ETS paid on credit.
*163 In contrast, the attorney fee is not closely associated with the cost of materials furnished for the library project. The attorney fee provision in the contract states, “In the event your account is placed in the hands of an attorney for collection after default, the customer agrees to pay 33% of the unpaid balance for attorney’s fees together with applicable costs.” The language of this provision indicates that attorney fees are unrelated to the cost of materials because, unlike the time-price differential, they bear no relation to the cost of supplying labor or materials. The attorney fee provision creates a penalty for collection efforts rather than determining Wyandotte’s expectancy—i.e., the price ETS owed for materials Wyandotte supplied. Indeed, it does not appear to be an attorney fee provision at all, because it does not define itself in terms of actual or reasonable attorney fees. It is, in fact, a liquidated damages clause that plaintiff could invoke if it placed an overdue debt into the hands of a collecting attorney.[15] Because this provision describes a liquidated collection cost rather *164 than a cost of the labor or materials themselves, it is not part of the sum justly due.
Furthermore, the attorney fee provision did not trigger by the 90-day deadline. In its 90-day notice to KEO and Westfield, dated November 1, 2010, Wyan-dotte claimed that the amount owed included the cost of materials furnished to ETS and the time-price differential. Wyandotte did not claim that it was owed an attorney fee because the provision had not yet triggered—Wyandotte did not sue ETS, KEO, and Westfield until March 14, 2011, which was well after the 90-day period that began to run on September 30, 2010. Thus, Wyandotte’s “amount claimed”[16] does not include an attorney fee because not only is the attorney fee provision not a price term related to the cost of materials Wyandotte furnished, as already explained in this opinion, but the provision also did not trigger by the 90-day deadline.
Therefore, while I agree with the majority that the time-price differential was properly included in Wyan-dotte’s award, I would hold that Wyandotte is not entitled to the attorney fee award because it is not directly related to the cost of materials it supplied. The attorney fee provision also triggered after the 90-day deadline created by the statute.
III. POSTJUDGMENT INTEREST
There are two relevant statutes on postjudgment interest in this case. Defendants argue that postjudg *165 ment interest should have been calculated under the default formula given in MCL 600.6013(8).[17] Instead, the trial court awarded Wyandotte postjudgment interest under MCL 600.6013(7), which states:
For a complaint filed on or after July 1, 2002, if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate, interest is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate specified in the instrument if the rate was legal at the time the instrument was executed. If the rate in the written instrument is a variable rate, interest shall be fixed at the rate in effect under the instrument at the time the complaint is filed. The rate under this subsection shall not exceed 13% per year compounded annually. [18]
MCL 600.6013(7) only applies when the judgment is rendered on a written instrument. According to the majority, this means MCL 600.6013(7) only applies if the written instrument is the actual basis of the judgment. However, I believe that the majority mistakenly concludes that the judgment was rendered on the PWBA rather than on a written instrument. As noted in the majority opinion and earlier in this opinion, although the PWBA creates Wyandotte’s cause of action, the trial court must examine the underlying agreement between Wyandotte and ETS to determine *166 what sum is justly due. The agreement here is as much the basis for the trial court’s judgment as the statute itself, so the judgment is rendered on a written instrument. Therefore, I believe it is most accurate to say the trial court’s judgment is rendered pursuant to the statute, but it is rendered on the underlying contract.
But there is an even more compelling reason to reject MCL 600.6013(7) as the basis for determining postjudgment interest. MCL 600.6013(7) does not apply because the underlying contract does not evidence indebtedness. MCL 600.6013(7) only applies “if a judgment is rendered on a written instrument evidencing indebtedness with a specified interest rate . . . .”[19] In this case, the agreement between Wyandotte and ETS did not evidence indebtedness for the simple reason that ETS did not owe plaintiff anything on the construction project at the time they entered into the agreement. Rather, the agreement merely provided structure for calculating a potential future debt. The plain language of MCL 600.6013(7) requires that the written instrument provide evidence of an existing debt, not evidence of a potential debt. “Evidence of indebtedness” is a term of art.[20] Indeed, when our statutes use the phrase “evidence of indebtedness,” they do so in contemplation of debt-bearing contracts or notes.[21]1 therefore concur with the majority that the *167 general interest rate under MCL 600.6013(8) applies, but I do so because the underlying contract does not provide evidence of indebtedness as required by MCL 600.6013(7).
IV. CONCLUSION
I do not believe Wyandotte is entitled to attorney fees. The so-called attorney fees specified in Wyan-dotte’s agreement with ETS are not related to the price of the materials Wyandotte furnished nor did the provision trigger by the statute’s 90-day deadline. Therefore, I would hold that attorney fees are not recoverable as a sum justly due and reverse the Court of Appeals on this issue. Furthermore, I do not agree with the majority’s reasoning regarding the award of postjudgment interest. Nevertheless, I concur with the majority’s conclusion that postjudgment interest should have been calculated under MCL 600.6013(8) rather than MCL 600.6013(7).

 MCL 129.201 et seq.

 Though I concur in the majority’s statement of the facts, I restate the most relevant facts here for the sake of clarity.

 Emphasis added.

 MCL 129.207.

 Id.

 Because each instrument was related to the same subject matter (i.e., Wyandotte’s provision of materials to ETS), we read these instruments together, as required under Culver v Castro, 126 Mich App 824, 826; 338 NW2d 232 (1983), citing Reber v Pearson, 155 Mich 593; 119 NW 897 (1909). Furthermore, the PWBA allows sub-subcontractors, like *158 Wyandotte, to rely on agreements that govern a continuing contractual relationship with a subcontractor, like ETS.

 MCL 129.207.

 Id. (emphasis added).

 Id.

 Id.

 Id.

 The majority misconstrues my argument, stating, “He argues that MCL 129.207 limits a claimant’s potential recovery to the amount unpaid 90 days after supplying the last of the labor or materials in *161 question.” The 90-day deadline does not cap the amount of damages that a claimant may recover. Instead, the deadline merely determines which price terms have triggered and, therefore, which categories of damages may be included in the claimant’s recovery. For example, when a time-price differential or similar provision is applicable, the amount unpaid may increase between the time the claimant gives its 90-day notice and the time the civil action is instituted, as in the present case.

 I am not persuaded by the majority’s argument, citing United States ex rel Maddux Supply Co v St Paul Fire & Marine Ins, 86 F3d 332 (CA 4, 1996), that certain federal circuit courts have interpreted the Miller Act, 40 USC 3131 et seq., to allow recovery of attorney fees. In Maddux Supply Co, the Fourth Circuit specifically noted that allowing recovery of attorney fees was consistent with its prior rulings “that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers.” Id. at 336. The PWBA does not require a general contractor or its surety to pay the amount owed by a subcontractor to a sub-subcontractor. Instead, as I have explained, the PWBA explicitly *162 limits recovery to the amount unpaid for labor or materials furnished. See MCL 129.207.

 Price Bros Co v Charles J Rogers Constr Co, 104 Mich App 369, 377; 304 NW2d 584 (1981) (emphasis added).

 See UAW-GM Human Resource Ctr v KSL Recreation Corp, 228 Mich App 486, 508; 579 NW2d 411 (1998) (“A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach.”). In this agreement, if ETS breaches by defaulting on its payments and Wyandotte must litigate to recover the amount owed, the attorney fee provision fixes Wyandotte’s damages: Wyandotte may recover the unpaid balance plus an additional 33% of that unpaid balance. In regard to attorney fee provisions and liquidated damages clauses, Williston on Contracts states:
It is a common provision in promissory notes, and an occasional stipulation in other kinds of contracts, especially mortgages, that in case of breach, the promisor will pay an attorney’s fee, the percentage or amount of which is sometimes stated, for enforcing the obligation. There seems no occasion to distinguish between mortgages and other contracts with reference to such a provision, which is clearly in the nature of a liquidated damages provision.
[[Image here]]
*164 The contract sometimes makes no provision concerning the amount of the stipulated fee; sometimes it fixes a sum, either by stating a percentage of the principal debt or by stating a lump sum. [24 Williston, Contracts (4th ed), § 65:23, pp 319-324 (emphasis added; citations omitted).]

 MCL 129.207.

 MCL 600.6013(8) states:
Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1,1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.

 Emphasis added.

 Emphasis added.

 See MCL 8.3a (“[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”).

 See Const 1963, art 9, § 31 (“The limitations of this section shall not apply to taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness .. ..”); MCL 12.272(d) (“ ‘Bond’ means a bond, note, financial instrument, or other evidence of indebtedness or obligation issued by the authority under this act.”); MCL *167 41.284 (“In lieu of borrowing money and issuing bonds or other evidence of indebtedness .. ..”); MCL 120.15 (“[T]he commission is authorized and empowered to issue notes, bonds or other evidences of indebtedness which shall be a lien upon the property to be acquired. .. .”); MCL 207.634 (“Bonds, obligations, or other evidences of indebtedness of the local governmental unit.. ..”); MCL 324.50102(3) (“ ‘Bond’ means a bond, note, or any other instrument issued to evidence indebtedness.”); MCL 388.981b(l) (“The state administrative board may authorize and approve an interest rate exchange or swap, hedge, or similar agreement or agreements in connection with the issuance of bonds, notes, or commercial paper issued under this act or in connection with outstanding bonds, notes, or commercial paper, or other obligations or evidence of indebtedness of this state under this act.”).