PRICE BROTHERS COMPANY v CHARLES J ROGERS
CONSTRUCTION COMPANY

Docket No. 51605. Submitted December 12, 1980, at Lansing.—Decided March 4, 1981. Leave to appeal applied for.

    The Charles J. Rogers Construction Company (Rogers) had a contract to install sewer lines in Bay City. Rogers entered into an agreement with Price Brothers Company (Price) whereby Price would supply the necessary pipe for the project. That agreement contained a warranty limitation which provided that Price would repair above ground or replace any defective pipe but would not be liable for any costs associated with the removal of the defective pipe or the installation of the replacement pipe. The agreement further provided that if Rogers failed to make payment within 30 days after the date of Price's statement for delivered pipe there would be a monthly service charge of one and one-half percent per month on any unpaid balance. Rogers secured the statutory public works contractors' bond covering this project from Aetna Casualty and Surety Company (Aetna). Price instituted an action in Bay Circuit Court against Rogers and Aetna for unpaid balances due for pipe delivered to Rogers pursuant to the agreements between Price and Rogers. Rogers counterclaimed, alleging that Price was liable for the costs associated with the removal of certain defective pipe and the installation of the replacement pipe supplied by Price. Following a bench trial, Ira W. Butterfield, J., entered judgment in favor of Price, holding that: (1) Rogers' counterclaim was barred by the time limitations contained in the Rogers-Price agreements; (2) Rogers' counterclaim was also barred by the warranty limitations in the Rogers-Price agreements; and (3) Aetna, as surety for payment for construction materials, was liable to Price for the amounts claimed by Price against Rogers, including the monthly service charge on the

REFERENCES FOR POINTS IN HEADNOTES
[1] 15A Am Jur 2d, Commercial Code § 24.
[2] 17 Am Jur 2d, Contractors' Bonds §§ 78, 79.
    Labor or material furnished subcontractor for public work or improvement as within coverage of bond of principal contractor. 92 ALR2d 1250.

unpaid balances. Defendants appeal, arguing that the trial court was in error on each of these bases for judgment. *Held:*

1. The warranty limitation contained in the agreements did not create a limited remedy which failed in its essential purpose within the meaning of the remedies provisions of the Uniform Commercial Code. Since the proofs showed that the type of pipe breakage experienced by Rogers on the project was not a type which would be totally unanticipated, it cannot be said that the agreed upon limitation on the seller's (Price's) liability on the happening of such an event failed in its essential purpose. The failure of essential purpose provision of the UCC remedies provisions, therefore, does not have application under these circumstances. While these circumstances might suggest a possible argument under the unconscionability provisions of the remedies provisions of the UCC, no opinion is expressed on the merits of that question, since the defendants have not raised or argued that question. Since defendant Rogers' counterclaim was barred by the limitation of warranty provision of the agreements, it is unnecessary to address the question of whether it was also barred by the time limitations in those agreements.

2. Since the monthly service charge associated with the failure to promptly pay the balances due is best characterized as a time price differential rather than as an independent loan by Price to Rogers, and since the bond and the controlling statute renders the surety, Aetna, liable for all unpaid indebtedness incurred by Rogers for materials, Aetna was properly held to be liable for the unpaid balances including the monthly service charges set forth in the agreements.

Affirmed.

1. SALES — CONTRACTS — REMEDIES — LIMITATIONS OF LIABILITY — UNIFORM COMMERICAL CODE.

A provision in a contract for the commercial sale of goods which limits the seller's liability with respect to defective goods to only the replacement of those goods but not to any consequential costs incurred by the buyer in the removal of the defective goods and installation of the replacement goods does not create a limited remedy which fails in its essential purpose within the meaning of the remedies provisions of the Uniform Commerical Code where the defect and consequential costs are not totally unanticipated (MCL 440.2719; MSA 19.2719).

2. SURETYSHIP AND GUARANTEE — BONDS — PUBLIC WORKS CONTRACTORS — MONTHLY SERVICE CHARGES — TIME PRICE DIFFERENTIAL.

A surety on a public works contractors' bond which guarantees

payment of all indebtedness of a contractor to its subcontractor for any materials supplied by the subcontractor is liable, upon nonpayment, for not only the cost of the materials but also the monthly service charges associated with payments which are not made within the period stated in the contract between the contractor and subcontractor, since such service .charges represent a time price differential for the materials rather than an independent loan by the subcontractor to the contractor (MCL 129.207; MSA 5.2321[7]).

*Kerr, Russell & Weber* (by *Robert R. Nix, II*), for plaintiff.

*Jenkins, Nystrom & Sterlacci, P.C.,* for defendant.

Before: BRONSON, P.J., and J. H. GILLIS and C. L. BOSMAN,* JJ.

J. H. GILLIS, J. The Charles J. Rogers Construction Company (Rogers) had engaged in a project to install sewer lines in Bay City. Price Brothers Company (Price) agreed to supply Rogers with the required sewer pipe, and The Aetna Casualty and Surety Company (Aetna) was Rogers' surety. On February 22, 1978, Price instituted suit against Rogers and Aetna for unpaid balances due pursuant to the agreements entered into. On July 31, 1978, Rogers filed a counterclaim. A bench trial was held, judgments were entered in favor of Price on April 28, 1980, and defendants appeal therefrom as of right.

The judgments from which defendants appeal provided as follows: (1) Rogers' counterclaim was barred by time limitations contained in the agreements between Rogers and Price; (2) Rogers' counterclaim was also barred by the warranty limita-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tions in the parties' agreements; and (3) Aetna, in its capacity as labor and materials payment surety, was liable to Price for unpaid service charges Price claimed against Aetna's principal, Rogers.

Although defendants challenge each of these bases for judgment in plaintiff's favor, only the latter two will be discussed herein.

On January 14, 1976, plaintiff and Rogers entered into an agreement whereby plaintiff agreed to furnish certain open cut pipe to defendant. A similar contract, dated April 14, 1976, embodied plaintiff's agreement to furnish jack pipe to defendant. Open cut pipe is installed by creating a ditch by open excavation and lowering the pipe in place. Jack pipe is installed by excavating a shaft to the depth of the sewer line. A mining machine is then lowered into the shaft with a length of sewer pipe attached to it. The mining machine and each successive sewer pipe are pushed forward underground by hydraulic jacks. When a pipe breaks in the tunnel, the operation must cease immediately, and the broken pipe is then replaced. This repair operation may take from one to two-and-a-half weeks. In the instant case, three separate jack-pipe breaks occurred, and plaintiff supplied replacement pipes in each instance. Rogers expended $60,315 to repair the jack-pipe breaks, a figure which represents approximately five percent of its total principal cost for all pipe supplied by Price.

Rogers' counterclaim asserted that the jack-pipe breaks resulted from defects in the pipes, and that plaintiff was liable for the $60,315 expended by Rogers in repairing the breaks by inserting new pipes in the underground sewer line. Plaintiff asserted in response that the contract limited Rogers' consequential damages to above-ground

replacement of the broken pipes and that it (plaintiff) had fulfilled this obligation. Rogers' claim of error on appeal is that the contract provision limiting Rogers' consequential damages to replacement of defective pipe failed of its essential purpose and, thus, the trial court erred in ruling that such provision barred Rogers' counterclaim.

At issue here is the meaning of MCL 440.2719; MSA 19.2719:

"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages

"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commerical is not."

While defendants do not challenge plaintiff's right to limit its liability to repair and replacement of defective pipe, as authorized by § 2-719(1)(a), defendants do assert that such remedy has failed of its essential purpose, a result which would leave defendants free to pursue other reme-

dies available under the Uniform Commercial Code. MCL 440.2719(2); MSA 19.2719(2).

The Official Comments to § 2-719(2) state as follows:

"Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."

In White & Summers, Handbook on the Law Under the Uniform Commercial Code, pp 380-383, some care is taken to point out that § 2-719(2) should be triggered only when the *remedy* fails of its essential purpose. That is, when unanticipated circumstances cause the seller to be unable to provide the buyer with the remedy to which the parties agreed, that remedy has failed of its essential purpose. It is a different question entirely if the remedy is unreasonable or unconscionable, for in such event it may not fail of its essential purpose although it leaves the buyer without an adequate remedy as to some part of the actions required to cure the problem.

In the instant case, the parties agreed that plaintiff would be liable for the above-ground repair and replacement of defective pipe. Plaintiff fulfilled this responsibility, but defendants assert that plaintiff should also bear the cost of placing the replacement pipe in the sewer line. Defendants' argument states that above-ground replacement "actually provides the buyer with no remedy at all". Several responses may be made to this argument.

First, even if the contracted-for remedy is, in fact, no remedy at all, it has not necessarily failed of its essential purpose. Defendant Rogers is a

long-established sewer line contractor which has had previous experience with jack-pipe sewer installations. Defendant Rogers' project manager, Frederick Rozelle, testified at trial that, although he had never before worked on a project in which such pipe breaks occurred, it was his experience that jack-pipe breaks were not unforeseeable. Testimony on plaintiff's behalf indicated that, because pipe breaks were foreseeable, the above-ground repair or replacement provision was necessary to allocate the risks and keep the price of the pipe at a reasonable level. Thus, the purpose of the contract clause was fulfilled; the risk of replacing broken pipe with new pipe was reallocated so that the overall cost of the pipe could be maintained at a reasonable level. When the pipe broke, plaintiff did exactly what it had contracted to do, and defendant was not left without any remedy at all.

As previously noted, § 2-719(2) is triggered when unanticipated circumstances render the seller unable to provide the buyer with the contracted-for remedy. If, in this case, a latent defect in *all* the pipes caused them to break during installation, and the replacement pipes were similarly defective, such a situation would clearly have been caused by unanticipated circumstances. The breakage which occurred here, however, was not an unanticipated circumstance. As such, this is not a proper case for application of § 2-719(2). Rather, defendants' argument would be better addressed to the question of unconscionability, although we express no opinion as to the merits of such an assertion. As defendants have not raised such an argument on appeal, it need not be considered further.

The trial court's finding that defendants' counterclaim is barred by the contract is affirmed.

Because of this holding, it is unnecessary to consider whether the counterclaim is also barred by contractual time limitations.

The final issue presented for our consideration involves the following clause contained in both contracts between the parties:

"Payment shall be due 30 days after the date of the statement. A service charge of 1-1/2 percent per month on the unpaid balance will be due on all amounts unpaid for 30 days after the due date. A 5% cash discount is applicable if paid within 30 days of the date of statement providing no other indebtedness to Price Brothers Company is delinquent."

Plaintiff asserts that, pursuant to this provision, Aetna is liable for the past due service charge incurred as a result of Rogers' failure to pay within 30 days after presentment of the invoice. The surety bond posted by Aetna states as follows:

"Now, therefore, the condition of this obligation is such that if payments shall be made by the Principal to any Subcontractor or by him or any Subcontractor as the same may become due and payable of *all indebtedness* which may arise from him to a Subcontractor or a party performing labor or furnishing materials or supplies or any Subcontractor to any person, firm or corporation *on account of any labor performed or materials or supplies furnished* in the performance of said contract, then this obligation shall be void; otherwise, the same shall be in full force and effect." (Emphasis supplied.)

The bond also is referenced to 1963 PA 213, MCL 129.201 *et seq.;* MSA 5.2321(1) *et seq.,* the act which regulates contractors' bonds for public works. Under § 7 of that act, a claimant who has furnished labor or materials may sue on the payment bond "for the amount, or the balance

thereof, unpaid at the time of institution of the civil action, prosecute such action to final judgment for the sum justly due him and have execution thereon".

The payment bond issued herein limits Aetna's liability to payment for labor or materials supplied to Rogers. It is undisputed that, under the payment bond, Aetna would not be liable for the payment of any separate loans from plaintiff to Rogers. The crucial issue is whether the one-and-one-half-percent monthly service charge constitutes a separate loan, or an extension of credit to Rogers, rather than a flexible price factor employed to reflect plaintiff's increased costs when its bills are not paid promptly. If the latter, the service charge is a time price differential which plaintiff argues Aetna may be obligated to pay.

In *Silver v International Paper Co,* 35 Mich App 469, 470; 192 NW2d 535 (1971), *lv den* 386 Mich 764 (1971), time price differential was defined, by way of example, as follows:

"Plaintiffs were given the opportunity to either pay cash for the properties or to purchase them on credit. The difference between the higher time price and the cash price is referred to as a 'time price differential.' "

As this illustration indicates, the differential is an integral part of the cost of the transaction. If the buyer pays cash, the seller receives the money immediately and no burden is placed on him. If the buyer elects to purchase on credit, the seller is burdened by the interruption to its cash flow, and so the buyer may pay a "price" for the benefit of receiving the materials without paying for them immediately.

Under the statute, plaintiff was entitled to sue on the payment bond, prosecute such suit to final

judgment "for the sum justly due him" and have execution thereon. MCL 129.207; MSA 5.2321(7). A nearly identical phrase in a payment bond considered in *Commonwealth v Continental Casualty Co,* 429 Pa 366, 369-370; 240 A2d 493 (1968), was construed to obligate the surety to pay interest on past due payments, because, "[t]he interest was an integral part of [the] debt for the material furnished, which material was unquestionably covered by the bond". In *Can-Tex Industries v Safeco Ins Co of America,* 460 F Supp 1022 (WD Pa, 1978), however, the surety was held *not* obligated to pay a one-and-one-half-percent monthly finance charge under the terms of its payment bond.

In *Can-Tex Industries, supra,* 1024, the surety was obligated by its bond to pay "all money which may be due any claimant supplying labor or materials in the prosecution and performance of the work in accordance with the Contract". "Labor and materials" was defined in the bond as including certain items, but a finance charge was not listed. *Id.* Further, the court noted that the statute requiring payment bonds for public works was intended "to place subcontractors in the same position with respect to defaulting contractors on a public works project that they would have enjoyed by virtue of a mechanic's lien on a private construction project". *Id.,* 1025. The mechanics' lien law not including finance charges, the court declined to impose an obligation to pay such costs on the surety, absent specific provision therefor in the payment bond.

In Michigan, the Supreme Court has recognized that the public works bond statute is a substitute for general lien statutes which would apply to materials supplied for private projects. *Alpena v Title Guaranty & Surety Co,* 159 Mich 329, 333;

123 NW 1126 (1909). Further, mechanics' liens are premised on the equities involved when a party supplies materials which are used to enhance the value of a particular project or property. *Smalley v Gearing*, 121 Mich 190, 198; 79 NW 1114 (1899). In such cases, the materials supplier is entitled to a preferred claim against the defaulting contractor. *Id.* Thus, if an analogy is drawn from mechanics' liens to public works payment bonds, the materials supplier in the latter case would be entitled to payment from the surety of sums justly due for materials which enhanced the value of the project.

On a purely hypothetical plane, finance charges may be seen as inextricably related to the enhanced value of the project and thus properly included within the terms of the payment bond. If the contractor's agreement to pay finance charges is in fact a condition precedent to delivery without simultaneous cash payment (COD), then the value of the property or project on which the materials are used is enhanced by such agreement. Otherwise, the materials supplier may refuse to deliver the goods and the project is stalled until another supplier is found. As such, we are persuaded that the surety is liable for the service charge, given that it was clearly an integral part of the contract between plaintiff and Rogers.

Affirmed.