COUGHLIN v DEAN

Docket No. 101699. Submitted November 14, 1988, at Lansing. Decided January 17, 1989.

William J. Coughlin was struck and killed by an automobile driven by William T. Dean. Dean was insured by Auto Club Insurance Association under a no-fault automobile insurance policy with a $100,000 limit on liability coverage. Prior to the accident, Dean had been drinking at the West Point Inn. Plaintiff, Diana C. Coughlin, personal representative of the estate of William J. Coughlin, deceased, then brought an action in the Jackson Circuit Court against Dean, alleging negligent operation of his automobile while under the influence of intoxicating liquor, and the West Point Inn, alleging a dramshop cause of action. A jury found Dean liable and plaintiff was ultimately awarded $212,000. The jury found that Dean was not visibly intoxicated while being served alcohol and rendered a verdict of no cause of action against the West Point Inn. Judgment on the verdict, entered May 1, 1985, awarded plaintiff twelve percent interest per annum from the date suit was filed on October 19, 1983, plus costs. Plaintiff moved for a new trial regarding the West Point Inn and for recovery of actual costs against Dean. The trial court, James G. Fleming, J., denied the motions in June, 1985, and plaintiff appealed to the Court of Appeals. On August 6, 1985, the attorneys for plaintiff and Auto Club spoke on the phone regarding a settlement. The parties disagree as to what transpired during the conversation. On January 16, 1987, the Court of Appeals issued an unpublished per curiam opinion affirming the trial court's rulings. On April 18, 1987, plaintiff commenced the instant garnishment action against Dean and Auto Club. On May 4, 1987, Auto Club issued a check to plaintiff for $123,843.56, representing $100,000 in policy limits, $1,203.56 costs, and interest of $22,640 computed at twelve percent on the policy limits from the date

REFERENCES

Am Jur 2d, Damages §§ 648 *et seq.*, 674; Judgments §§ 979 *et seq.*

Date of verdict or date of entry of judgment thereon as beginning of interest period on judgment. 1 ALR2d 479

Liability insurer's liability for interest and costs on excess of judgment over policy limit. 76 ALR2d 983.

the complaint in the principal action was filed, October 19, 1983, to August 6, 1985, the date Auto Club allegedly, by phone, offered its policy limits. Auto Club also moved to quash the garnishment on the grounds that it should not be penalized for interest accruing after August 6, 1985. Plaintiff responded that it was unable to accept settlement during the appeal period pursuant to the name and retain provision of the dramshop act. The trial court, James G. Fleming, J., ruled that interest continued to accrue on the full amount of the judgment even after Auto Club's August 6, 1985, offer since Auto Club did not formally tender payment to plaintiff. Auto Club appealed, raising two issues: (1) Does postjudgment interest accrue between its offer of payment on August 6, 1985, and the conclusion of plaintiff's unsuccessful appeal of the jury verdict in her favor? (2) If so, is Auto Club liable for such interest?

The Court of Appeals *held:*

1. Although plaintiff was precluded from accepting payment under the name and retain provision of the dramshop act as long as she pursued her appeal, nothing prevented Auto Club from paying into court that portion of the judgment for which, as insurer, it was liable. Had Auto Club done so, under MCR 2.620(2) it would have cut off further accrual of interest. Auto Club did not tender the amount for which it was liable sufficient to stop the accrual of interest under MCL 600.6013; MSA 27A.6013.

2. Auto Club's argument that, pursuant to the terms of its policy, it was not liable for interest on the judgment was raised for the first time on appeal. The Court of Appeals, finding that no manifest injustice would result to Auto Club from the failure to consider the issue, chose not to consider the issue.

Affirmed.

1. JUDGMENTS — INTEREST — MONEY JUDGMENTS.

Interest on a money judgment is calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of twelve percent per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest where the complaint was filed on or after June 1, 1980, but before January 1, 1987 (MCL 600.6013[4]; MSA 27A.6013[4]).

2. JUDGMENTS — SATISFACTION OF JUDGMENTS.

A judgment may be shown satisfied of record in whole or in part by: (1) filing with the clerk a satisfaction signed and acknowledged by the party or parties in whose favor the judgment was rendered, or their attorneys of record; (2) payment to the clerk

of the judgment, interest, and costs, if it is a money judgment only; or (3) filing a motion for entry of an order that the judgment has been satisfied; the court shall hear proofs to determine whether the order should be entered (MCR 2.620).

3. APPEAL — PRESERVING QUESTION.

An appellate court generally will not consider an issue raised for the first time on appeal; review may be granted if failure to consider the issue would result in manifest injustice.

*Aymond, Sullivan, Whedon & Thompson* (by *Thomas J. Sullivan* and *Jo Anne Rosenfeld*), for plaintiff.

*MacArthur, Cheatham & Acker, P.C.* (by *James G. Gross* and *Mary T. Nemeth*), for Auto Club Insurance Association.

Before: SHEPHERD, P.J., and GRIBBS and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In this garnishment action we are asked to decide whether postjudgment interest accrued on plaintiff's $212,000 judgment against defendant William Dean after garnishee-defendant Auto Club Insurance Association (ACIA), Dean's no-fault insurer, tendered a check to plaintiff for $123,843.56. On June 9, 1987, the trial court issued its order holding that interest continued to accrue in full on the judgment and denying a motion to quash the postjudgment garnishment proceedings. From the trial court's order, ACIA appeals as of right. We affirm.

On August 12, 1983, plaintiff's husband, William J. Coughlin, was struck and killed by an automobile driven by William T. Dean who was insured by ACIA under a no-fault automobile insurance policy with a $100,000 limit on liability coverage.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Prior to the accident, Dean had been drinking at the West Point Inn. On October 19, 1983, plaintiff filed suit against Dean and the West Point Inn. Plaintiff's complaint charged Dean with negligent operation of his automobile while under the influence of intoxicating liquor and stated a dramshop cause of action, MCL 436.22; MSA 18.993, against the West Point Inn.

A jury trial was held in April, 1985. The jury found Dean liable and assessed damages of $400,000, but held that, because William Coughlin was forty-seven percent comparatively negligent, the damages were reduced to $212,000. The jury also found that Dean was not visibly intoxicated while being served alcohol and rendered a verdict of no cause of action against the West Point Inn. Judgment on the verdict, entered May 1, 1985, awarded plaintiff twelve percent interest per annum from the date suit was filed on October 19, 1983, plus costs.

Dissatisfied with the "no cause" verdict against West Point Inn, plaintiff moved for a new trial and also moved for recovery of actual costs against defendant Dean. In June, 1985, both motions were denied by the trial court and plaintiff appealed to this Court. On August 6, 1985, not long after appellate proceedings had commenced, ACIA's attorney contacted plaintiff's attorney by phone regarding settlement. The parties disagree as to what transpired during the phone conversation. At the May 29, 1987, hearing on the issue, both counsel agreed that a phone call was made and that the subject of settlement for the policy limits was discussed. The attorney for ACIA contended that, during the call, he tendered payment by offering a check and that plaintiff's counsel refused the check on grounds that under the name and retain provisions of the dramshop act it would

jeopardize his appeal against the West Point Inn. Plaintiff's counsel testified that the call was limited to an inquiry whether plaintiff would accept payment if tender were in fact made of the policy limits plus interest and costs. Counsel further stated that during the call he suggested that, to resolve the problem, ACIA place the funds with the trial court.

To clarify the issue, plaintiff filed a motion with our Court, asking that we hold that a posttrial settlement with the alleged intoxicated person does not violate the "name and retain" provision of the dramshop act. On September 12, 1987, this Court denied plaintiff's motion and on January 16, 1987, issued an unpublished per curiam opinion affirming the trial court's rulings in toto. Docket Nos. 85702, 85904, 90014.

On April 18, 1987, plaintiff commenced the instant garnishment action against Dean and ACIA. On May 4, 1987, ACIA issued its check for $123,843.56 to plaintiff. The sum represented $100,000 in policy limits, $1,203.56 costs, and interest of $22,640 computed at twelve percent on the policy limits from the date the complaint in the principal action was filed, October 19, 1983, to August 6, 1985, the date ACIA allegedly, by phone call, offered its policy limits. ACIA further moved to quash the garnishment on grounds that it should not be "penalized" for interest accruing after August 6, 1985. To this motion plaintiff responded that she was unable to accept settlement during the period of appeal and further asserted that if ACIA had intended to stop the accrual of interest after August 6, 1985, it could have deposited the funds with the court. On May 29, 1987, following oral arguments, the trial court ruled that interest continued to accrue on the full amount of the judgment even after ACIA's August

6, 1985, offer since ACIA did not formally "tender" payment to the plaintiff.

> *The Court:* Well, counsel, I'm well acquainted with the law of tender. I have issued quite a few opinions on this subject.
> Tender does not mean "I will pay you," "I will bring you a check over," "I will see that it is put in the mail," whatever the promise is. Tender is the actual offer of the legal tender and payment of the obligation. It's an action but not a promise.
> There is no legal tender here under those circumstances. It's the obligation of the defendant here to pay the judgment in full with the interests accrued through the date of the total payment. You have a partial satisfaction, so whatever the interests is up to this date then is the interest that is owing.

ACIA appeals raising three issues[1] which, for purposes of this opinion, we combine to two issues: (1) Does postjudgment interest accrue between ACIA's offer of payment in August, 1985, and the conclusion of plaintiff's unsuccessful appeal of the jury verdict in her favor?; (2) If so, is ACIA liable for such interest?

I

The relevant statutory provision governing interest on the money judgment in the instant case is MCL 600.6013(4); MSA 27A.6013(4), which states:

For complaints filed on or after June 1, 1980,

---

[1] ACIA's brief raises three issues: (1) Postjudgment interest does not accrue during the period between ACIA's offer of payment on August 6, 1985, and the unsuccessful conclusion of plaintiff's appeal to this Court on January 16, 1987; (2) If so, no interest accrues on the $100,000 portion of the judgment which ACIA offered to pay on August 6, 1985; (3) If postjudgment interest accrues after August 6, 1985, William Dean, rather than ACIA, is liable for such interest.

but before January 1, 1987, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest.

The permissible ways in which a judgment may be satisfied are set forth in MCR 2.620, which provides:

A judgment may be shown satisfied of record in whole or in part by:

(1) filing with the clerk a satisfaction signed and acknowledged by the party or parties in whose favor the judgment was rendered, or their attorneys of record;

(2) payment to the clerk of the judgment, interest, and costs, if it is a money judgment only; or

(3) filing a motion for entry of an order that the judgment has been satisfied. The court shall hear proofs to determine whether the order should be entered.

The statute is remedial and primarily intended to compensate prevailing parties for expenses incurred in bringing suits for money damages, *and for any delay in receiving such damages. Heyler v Dixon,* 160 Mich App 130, 152; 408 NW2d 121 (1987), lv den 428 Mich 922 (1987). Because it is remedial, the statute should be liberally construed in favor of the plaintiff. *Denham v Bedford,* 407 Mich 517, 528; 287 NW2d 168 (1980).

Relying strongly on *Heyler v Dixon, supra,* ACIA argues that it vigorously tried to settle this matter on August 6, 1985, and should not be penalized for not paying the judgment when it was prevented by the dramshop law from doing so. In *Putney v Haskins,* 414 Mich 181; 324 NW2d 729 (1982), reh den 414 Mich 1111 (1982), the Supreme Court held that when any type of settlement is reached with the intoxicated person, the case against the tavern

must be dismissed. In *Heyler,* our Court denied interest on a judgment against a tavern for a 16½ month pretrial stay ordered by the trial court. In so doing, the *Heyler* Court quoted from 45 Am Jur 2d, Interest and Usury, ¶ 103, pp 90-91:

> If the adjudication is valid, *interest will not accrue during the time that the payment of a debt is prevented through no fault of the debtor by the interposition of law,* as where payment is prevented by a judgment, order, statute, or judicial process. Thus, interest will not, as a rule, be charged against one who is enjoined from making payment unless it appears or can fairly be presumed that he actually gained some advantage by the use of the money or received some interest or profit from its use by others, although, according to some authorities, he must pay the money into court in order to escape the payment of interest.

We find *Heyler* significantly distinguishable from the instant case. There, no judgment had been reached and the issue involved was prejudgment interest. Consequently, *Heyler* never reached the question involved here, viz., that funds must be paid into court before the judgment debtor may escape the payment of interest. In *Heyler,* the defendant was powerless, because of the stay, to stop the accrual of interest. Here, although plaintiff was precluded from accepting payment under the name and retain provision of the dramshop act as long as she pursued her appeal, nothing prevented ACIA from paying into court that portion of the judgment for which, as insurer, it was liable. Had ACIA done so, under MCR 2.620(2) it would have cut off further accrual of interest.

ACIA next argues that where, as here, the judgment creditor alone appeals the judgment, the judgment debtor is not liable for interest accruing during the appeal period. In support of this position ACIA cites 45 Am Jur 2d, Interest and Usury,

¶ 106, pp 92-93 and 15 ALR3d 414-415.[2] Michigan has not squarely decided the question. However, a full review of the authority cited discloses that other states are about evenly divided on the question. See *Kotsopoulos v Asturia Shipping Co,* 467 F2d 91 (CA 2, 1972). More significantly, none of the cases relied upon by ACIA involved the situation where, as here, during the appeal process the judgment debtor's insurer could have paid the money into court and thus precluded the accrual of interest. To hold in favor of ACIA would allow it to retain and use money owed, interest free. In our opinion this was not the intent of the statute. MCL 600.6013; MSA 27A.6013.

Finally, as to Issue I, ACIA argues that its August 6, 1985, tender of the full policy limits of $100,000, plus interest and costs, relieves it of any further liability for interest accruing thereafter. The trial court held that "tender" was not made since no check was made or sent to plaintiff. On appeal, ACIA argues that actual tender would be a futile gesture where the creditor flatly refuses the offer. *Greater Bloomfield Real Estate Co v Braun,* 64 Mich App 128, 134; 235 NW2d 168 (1975), lv den 399 Mich 865 (1977). We agree that Michigan law does not require a futile gesture, but disagree that the gesture would have been "useless." It was not necessary that ACIA tender the total amount of the judgment. It was only necessary that ACIA tender the amount for which, under its policy of insurance with Dean, it was liable. *Central Michigan University Faculty Ass'n v Stengren,* 142 Mich App 455, 461; 370 NW2d 383 (1985), lv den 425 Mich 854 (1986). ACIA elected to make no such tender, but instead chose to retain the funds in its

[2] See *Quality Molding Co v American National Fire Ins Co,* 287 F2d 313 (CA 7, 1961); *Jesser v Mayfair Hotel, Inc,* 360 SW2d 652 (Mo, 1962); *Laramie Valley R Co v Gradert,* 43 Wyo 268; 3 P2d 88 (1931).

own account where they drew interest during the appeal period.

ACIA may not have it both ways. It was 3½ months after this Court had rejected plaintiff's appeal before ACIA paid anything. In the intervening period plaintiff requested payment, but never received anything. Accordingly, we find that ACIA did not tender the amount for which it was liable sufficient to stop the accrual of interest under MCL 600.6013; MSA 27A.6013.

## II

Lastly, ACIA argues that should this Court conclude as indeed we have concluded—that postjudgment interest accrued on plaintiff's judgment after August 6, 1985—under the terms of its no-fault policy ACIA is still not liable for interest on that judgment. The "Liability Insurance Coverages" portion of the policy in the instant case expressly cuts off ACIA's liability for postjudgment interest if *any* of three events occurs—payment, offer of payment, *or* deposit in court.

> In addition to the Limits of Liability for this coverage we will also pay:
> All costs we incur in the settlement of any claim or defense of any suit,
> *Interest on damages awarded in any suit we defend accruing after judgment is entered and before we have paid, offered to pay, or deposited in court that portion of the judgment which is not more than our Limit of Liability.*

Since ACIA offered on August 6, 1985, to pay the full limits of its policy, plus interest to date thereon, ACIA argues that the second option of the policy was satisfied and a further deposit into

court was unnecessary. *Needy v Sparks,* 74 Ill App 3d 914, 920; 393 NE2d 1252 (1979).

As noted in the statement of facts, the parties disagree regarding the specificity with which the phone call "offer" to pay the policy limits plus interest was made. This issue was not brought to the trial court's attention and the trial court did not rule on whether ACIA counsel's phone call on August 6, 1985, was in fact an offer to pay. Instead, the arguments were confined to whether ACIA "tendered" payment. The language of the policy was never an issue either in the arguments at the hearing or in ACIA's motion to quash.[3]

This Court generally declines to consider an issue raised for the first time on appeal. *Trail Clinic, PC v Bloch,* 114 Mich App 700, 711; 319 NW2d 638 (1982), lv den 417 Mich 959 (1983). Review may be granted if failure to consider the issue would result in manifest injustice. In view of the fact that ACIA had use of the money and drew interest thereon from August 6, 1985, to the date of final payment, we find no manifest injustice. Were we to hold to the contrary, manifest injustice would fall on plaintiff.

Affirmed.

---

[3] The "standard insurance clause" was discussed in *Matich v Modern Research Corp,* 430 Mich 1, 23-24; 420 NW2d 67 (1988). It obligates the insurer to pay interest on the judgment "which accrues after entry of judgment and before [the insurer] has *tendered* or deposited in court that part of the judgment which does not exceed the limit of [the insurer's] liability thereon." The clause in the ACIA policy substitutes "offered to pay" for "tendered."