SEVERN v SPERRY CORPORATION

Docket No. 151353. Submitted January 4, 1995, at Detroit. Decided
July 28, 1995, at 9:00 A.M. Leave to appeal sought.

James D. Severn brought an action in the Saginaw Circuit Court
against Sperry Corporation, alleging breach of warranty under
the Uniform Commercial Code, MCL 440.1101 *et seq.*; MSA
19.1101 *et seq.*, with respect to a cattle-feed grinder that
allegedly failed to properly mix feed and supplements for the
plaintiff's dairy herd, resulting in a decrease in milk produc-
tion. The court, Joseph R. McDonald, J., granted a motion by
the plaintiff to add Debbie Severn, his wife, as a plaintiff.
Mediation concluded in a $35,000 evaluation for the plaintiffs,
which the plaintiffs accepted and the defendant rejected. A jury
returned a $60,426.35 verdict for the plaintiffs. The court
granted a new trial to the defendant, ruling that the jury had
been confused about damages. The jury at the second trial
returned a $48,850 verdict for the plaintiffs. The court, William
A. Crane, J., denied a motion by the defendant for judgment
notwithstanding the verdict or a new trial. The plaintiffs
agreed to a reduction in damages to $32,056.96, representing
lost profits from reduced milk production. As a sanction for the
defendant's rejection of the mediation evaluation, the court
awarded the plaintiffs' attorney fees and costs incurred in the
second, but not the first, trial. The defendant appealed, and the
plaintiffs cross appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying the defendant's
motion for judgment notwithstanding the verdict or a new
trial. The evidence, which included circumstantial evidence of
the grinder's defective condition and evidence that the limited
warranty failed of its essential purpose so as to make the defect
actionable in light of the warranty, supported the verdict.

2. There is no merit to the defendant's argument that the

REFERENCES

Am Jur 2d, Appellate Review § 842; Damages § 486, 616; Products
Liability § 526; Sales § 926, 1248, 1250.
See ALR Index under Attorneys' Fees; Circumstantial Evidence;
Damages; Products Liability; Warranties.

motion for a new trial should have been granted at the second trial because a similar motion was granted at the first trial. New evidence was presented at the second trial that lent additional support to the jury's verdict.

3. The defendant waived appellate review of the claim that the trial court erred in permitting the addition of Debbie Severn as a plaintiff. The defendant did not raise the issue in the trial court and did not adequately argue it on appeal.

4. The award of damages for lost profits was adequately supported by the evidence.

5. The award to the plaintiffs of mediation sanctions should have included attorney fees for work performed during the first trial. Attorney fees generated in connection with both trials were necessitated by the rejection of the mediation evaluation, and the ultimate result was in the plaintiffs' favor. Thus, the plaintiffs are entitled to attorney fees for both trials. On remand, the trial court must recalculate mediation sanctions and ensure against double payment for work needlessly duplicated for the second trial.

6. The trial court did not err in granting a new trial after the first trial in view of the jury's confusion regarding damages.

Affirmed in part, reversed in part, and remanded.

JANSEN, P.J., dissenting in part, stated that the trial court did not abuse its discretion in refusing to award as mediation sanctions attorney fees incurred in the first trial because the ultimate verdict did not exceed the mediation evaluation and the second trial was not necessitated by the rejection of the mediation evaluation, but by an error in the proceedings of the first trial.

1. SALES — BREACH OF WARRANTY — DEFECTIVE PRODUCTS — CIRCUMSTANTIAL EVIDENCE.

In an action for breach of warranty relating to a defective product, the existence of a defective condition may be inferred by the jury from circumstantial evidence alone.

2. SALES — BREACH OF WARRANTY — DEFECTIVE PRODUCTS — UNIFORM COMMERCIAL CODE.

A limited warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed; in such case, the warranty and any accompanying limitation of damages are inoperable and the buyer may seek recovery under the warranty provisions of the Uniform Commercial Code (MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*).

3. SALES — BREACH OF WARRANTY — DEFECTIVE PRODUCTS.

A seller's good-faith efforts to repair or replace defective parts of a product under a limited warranty are insufficient to justify reliance on the limited warranty alone where the seller is unable to effect repairs within a reasonable time.

4. DAMAGES — AMOUNT — APPEAL.

Recovery of damages is not precluded simply because proof of the amount of damages is not mathematically precise; where reasonable minds can differ regarding the level of certainty to which damages have been proved, the Court of Appeals is careful not to invade the fact finding of the jury and substitute its own judgment.

5. PRETRIAL PROCEDURE — MEDIATION — SANCTIONS — ATTORNEY FEES.

Attorney fees incurred at trial and retrial of a case may be awarded as a sanction for the rejection of a mediation evaluation (MCR 2.403[O]).

*Donald E. Cline, Jr.,* for the plaintiffs.

*Ronald R. Pawlak,* and *Smith, Bovill, Fisher, Meyer & Borchard, P.C.* (by *Robert A. Jarema*), for the defendant.

Before: JANSEN, P.J., and MICHAEL J. KELLY and HOOD, JJ.

MICHAEL J. KELLY, J. Defendant appeals as of right a judgment entered by the circuit court, following a second jury trial, awarding plaintiffs $32,056.96 in damages for breach of warranty, plus costs, attorney fees, and interest. Defendant challenges the denial of its motions for a directed verdict and for a new trial and the grant of plaintiff James Severn's motion to add Debbie Severn, his wife, as a party plaintiff. Plaintiffs cross appeal as of right an order of the circuit court denying their motion for mediation sanctions. In particular, they contest the trial court's failure to award attorney fees for time spent in

preparation for the first jury trial, which also resulted in a verdict for plaintiffs. That verdict was found to be against the great weight of the evidence, and a new trial was ordered. Plaintiffs also appeal the order granting a new trial.

I

In December 1984, plaintiffs, who operate a dairy farm, purchased a cattle-feed grinder that was manufactured by defendant. The device was supposed to grind and mix feed and supplemental nutrients uniformly. The grinder was covered by a two-year written warranty under which defendant's obligations were limited to repairing defects or, at defendant's option, replacing any parts that in defendant's judgment were defective. The warranty also stated:

> Except as set forth above THE COMPANY SHALL HAVE NO OBLIGATION OR LIABILITY OF ANY KIND ON ACCOUNT OF ANY OF ITS EQUIPMENT, AND SHALL NOT BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES. THE COMPANY MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, AND SPECIFICALLY, THE COMPANY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS.

The second page of the warranty provided details regarding coverage, stating in part:

> ITEMS NOT COVERED
>
> * * *
>
> 7. Miscellaneous —No warranty shall apply to damage resulting from accident, misapplication, abuse, or damage caused by environment (such as exposure to corrosive material).

Plaintiffs took delivery of the grinder on Janu-

ary 7, 1985. Plaintiffs testified that not long after they began to use the grinder, they noticed a decrease in milk production among their cows, which were fed from the grinder. Because they first thought that something might be wrong with the feed concentrate that they had been using since 1979, they arranged for a feed analysis. However, the analysis showed that the balance of feed and concentrate given to the cows had not changed since 1979.

In March 1986, plaintiffs complained for the first time to the salesman who sold them the grinder. They contended that the grinder was mixing the feed and nutrition supplements unevenly. The salesman, Chris Muto, arranged to have a service representative of defendant inspect the grinder. The service representative, Loran Cook, found four inches of rust around the bottom of the mixing tub. Plaintiffs had been grinding high-moisture corn and storing the mixture in the tub during the first year of use. Defendant contended that this caused the feed mixture to stick to the sides of the mixing cone, inhibiting uniform mixing. Plaintiff James Severn arranged for the rust to be sanded down.

In April or May 1986, Muto and Cook returned to plaintiffs' farm. Plaintiff complained that the grinder was still not mixing properly. Cook suggested that the mixing arms on the grinder be extended to improve performance, which plaintiff James Severn undertook to do himself. However, the lengthened arms bent because they were not strong enough to withstand the forces experienced during the mixing and grinding. Plaintiffs subsequently replaced the original mixing arms on the grinder.

In July 1986, plaintiffs stopped making payments on the grinder, and defendant's credit com-

pany threatened legal action. Plaintiff James Severn acted first, filing a complaint on October 26, 1986, against defendant. He alleged breaches of warranty under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, and the commission of various torts. On February 26, 1989, the trial court granted defendant's motion for summary disposition of the tort claims, leaving only the breach of warranty claim.

The first trial commenced on February 14, 1989. Near the beginning of the trial, plaintiff James Severn moved to add his wife, Debbie Severn, as a party plaintiff. The trial court granted the motion. A jury verdict for plaintiffs was returned on February 23 in the amount of $60,426.35, not including interest, costs, and attorney fees.

On July 7, 1989, the trial court heard defendant's motions for judgment notwithstanding the verdict (JNOV) and a new trial. The motion for a new trial was granted. Although the order implied that the jury erred with regard to the question of liability, the trial court stated that it was not granting a new trial on that basis. Rather, the court was convinced that the jury was confused regarding certain damages. Plaintiffs' application for leave to appeal the order granting a new trial was denied by this Court on January 2, 1990.

A second jury trial began on October 9, 1991, with a different judge presiding. On October 22, 1991, the jury returned a verdict for plaintiffs in the amount of $48,850. Once again, defendant moved for JNOV and a new trial, which the trial court denied with respect to liability. However, the court found that certain damages were clearly excessive. Because plaintiffs had no desire to go through a third trial, they agreed to remit $16,793.04 in damages, leaving $32,056.96, which

represented net lost profits from reduced milk production.

On February 24, 1992, a hearing was held on plaintiffs' request for mediation sanctions under MCR 2.403(O). Plaintiffs had accepted, but defendant had rejected, a $35,000 mediation evaluation before the first trial. Although the trial court awarded costs and fees for work associated with the second trial, it declined to grant plaintiffs' request for costs and fees for work associated with the first trial.

On April 9, 1992, judgment was entered in the amount of $32,056.96, plus costs in the amount of $3,315.65, attorney fees in the amount of $15,187.50, and interest.

II

Defendant first challenges the trial court's denial of its motions for JNOV and a new trial.

A

In reviewing a motion for JNOV, this Court views all evidence in a light most favorable to the nonmoving party. If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand. *Thorin v Bloomfield Hills Bd of Ed*, 203 Mich App 692, 696; 513 NW2d 230 (1994). With respect to a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party. This Court's function is to determine whether the trial court abused its discretion in making such a finding. This Court gives substantial deference to the conclusion of a trial court that a verdict was not against the great weight of the evidence. However, less deference is afforded a

determination that the verdict was against the great weight of the evidence. *Arrington v Detroit Osteopathic Hosp (On Remand),* 196 Mich App 544, 560, 564; 493 NW2d 492 (1992).

B

In actions for breach of warranty, a jury may infer the existence of a defective condition from circumstantial evidence alone. *Holloway v General Motors Corp (On Rehearing),* 403 Mich 614, 618; 271 NW2d 777 (1978); *Caldwell v Fox,* 394 Mich 401, 410; 231 NW2d 46 (1975). Here, plaintiffs testified that the grinder did not properly grind and mix the feed and supplements and offered evidence of a resulting decline in milk production. An independent visual inspection performed under defendant's direction between the two trials showed that the grinder was not mixing properly. Subsequent chemical analysis confirmed that there was wide variation in the contents of feed samples taken from the grinder. Such evidence was sufficient to allow the jury at the second trial to conclude that the grinder was defective even if no particular defect could be identified.

The issue still remaining is whether the defect was actionable in light of defendant's limited written warranty. Under UCC § 2-719, MCL 440.2719; MSA 19.2719, plaintiffs were limited to defendant's written warranty, providing only for replacement of defective parts and materials, unless the warranty failed of its essential purpose. In *Price Bros Co v Charles J Rogers Construction Co,* 104 Mich App 369, 374-375; 304 NW2d 584 (1981), this Court held that a warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which the parties agreed, in which event the buyer

is entitled to seek remedies under the standard UCC warranty provisions. In *Kelynack v Yamaha Motor Corp, USA,* 152 Mich App 105, 112-113; 394 NW2d 17 (1986), this Court held that a seller's good-faith efforts to repair or replace defective parts under a limited warranty are insufficient to justify reliance on the limited warranty alone when the seller is unable to effect repairs within a reasonable time.

Here, plaintiffs informed defendant in March 1986 that the grinder was not operating properly. Although defendant acted promptly and apparently in good faith, it was unable to repair the grinder. When plaintiffs reported in May 1986 that they were still experiencing problems, defendant did nothing more than suggest that they extend the mixing arms. Essentially, defendant told plaintiffs that they would have to fix the problem themselves. Subsequently, defendant did not give any indication of an ability or willingness to discover and fix the problem, even when plaintiff James Severn stopped making payments in July 1986. Nor did defendant offer to replace plaintiffs' grinder with a new one. Although the grinder still mixed and ground, the uniformity of the mixing and grinding was key to the value of the grinder. Under these circumstances, we believe the there was sufficient evidence to conclude that defendant's limited written warranty failed of its essential purpose. As a result, both the warranty and its accompanying limitation of damages were inoperable and plaintiffs were entitled to recovery under the standard UCC warranty provisions. See *id.* at 114-115.

Defendant's argument that its second motion for a new trial should have been granted just because the first one also was granted is without merit.

New evidence was presented at the second trial that lent additional support to the jury's verdict.

### III

Defendant next argues that the trial court erred in permitting the late addition of plaintiff Debbie Severn as a party. Defendant first contends that her claims, though not her husband's, were barred by the statute of limitations. However, defendant did not raise this issue below, nor does it adequately argue the issue on appeal. The issue is therefore waived. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959); *Coughlin v Dean,* 174 Mich App 346, 356; 435 NW2d 792 (1989).

Defendant also claims that the late addition of plaintiff Debbie Severn was tantamount to prejudicial surprise. However, defendant fails to indicate how her earlier addition would have altered its trial strategy. Further, it can hardly be claimed that her addition during the first trial prejudiced defendant in any way during the second trial, which occurred more than 2½ years later.

### IV

Defendant lastly argues that the award of consequential damages for milk production losses was improper in light of the evidence. We disagree. When a plaintiff proves injury, recovery is not precluded simply because proof of the amount of damages is not mathematically precise. *Godwin v Ace Iron & Metal Co,* 376 Mich 360, 368; 137 NW2d 151 (1965). Further, where reasonable minds could differ regarding the level of certainty to which damages have been proved, this Court is careful not to invade the fact finding of the jury and substitute its own judgment. *Fera v Village*

*Plaza, Inc,* 396 Mich 639, 648; 242 NW2d 372 (1976).

Plaintiffs proved damages in large part through the expert testimony of a nutritionist, who analyzed various herd evaluation reports prepared by the Michigan Dairy Herd Improvement Association. These reports showed a significant decrease in milk production between 1985 and 1987, followed by a rebound in 1988 after plaintiffs stopped using defendant's grinder. Defendant first argues that the nutritionist failed to account for the changes in the composition of plaintiffs' herd over the years. However, plaintiffs showed to a reasonable degree of accuracy that these changes should have led to an increase in milk production because of the increase in the age of the herd. Because lost production profits were calculated on the basis of the past performance of the herd when it consisted of younger animals, plaintiffs' method of calculating damages was weighted on the conservative side.

Defendant also claims that the nutritionist's calculations of lost profits did not take overhead costs into account. However, a portion of the award of lost profits was remitted on this basis. Further, it is unlikely that the lost profits, if realized, would have required additional overhead costs that were not accounted for in the minimal profits already realized or in the remitted portion of the damages.

The final award of damages for lost profits was adequately supported by the evidence.

v

Plaintiffs argue that their award of mediation sanctions should have included attorney fees for work performed during the first trial. MCR

2.403(O) allows a party who accepts a mediation evaluation to recover actual costs "necessitated by the rejection" of the evaluation by the opposing party if that party does not succeed in obtaining a more favorable verdict at trial. In *Michigan Basic Property Ins Ass'n v Hackert Furniture Distributing Co, Inc,* 194 Mich App 230, 235-236; 486 NW2d 68 (1992), this Court held that the phrase "necessitated by the rejection" denotes only a temporal demarcation, precluding recovery of fees for hours spent before rejection of the mediation evaluation. In *Keiser v Allstate Ins Co,* 195 Mich App 369, 374; 491 NW2d 581 (1992), this Court held that whether mediation sanctions should be awarded depends on the outcome of the case, including the result of any appeal.

While plaintiffs' argument is one of first impression, *Hackert Furniture* and *Keiser* provide support for it. Clearly, fees generated in connection with both trials were "necessitated by the rejection" of the mediation evaluation because they arose after the rejection. Moreover, the ultimate result of the case was in plaintiffs' favor. Finally, plaintiffs' interpretation of the court rule is harmonious with its purpose, which is to impose the burden of litigation costs upon the rejecting party. *Keiser, supra* at 372. The cost of two trials was part of the risk assumed by defendant when it rejected the mediation evaluation.

We therefore remand for a recalculation of mediation sanctions. The trial court is well positioned to review the attorney fees claimed by plaintiffs in order to prevent double payment for work if it was needlessly duplicated for the second trial.

VI

Plaintiffs also argue that the verdict from the

first trial was not against the great weight of the evidence and that the trial court erred in granting a new trial on that basis. We disagree.

The jury in the first trial awarded consequential damages for two hundred hours of labor. We agree with the trial court that there was no basis for awarding compensation for two hundred hours of labor, and that such a finding evidenced some degree of confusion by the jury. Furthermore, the jury calculated the differential value of the grinder by setting the "as warranted" value at the purchase price plus finance and interest charges, then deducting the actual value, which the jury deemed to be zero. Yet, plaintiffs testified that they continued to use the grinder for operations not related to milk production up to and including the time of trial, evidencing some degree of actual value. In light of the inconsistencies between the jury verdict and the evidence, the trial court did not abuse its discretion in granting defendant's initial request for a new trial.

Affirmed in part, reversed in part, and remanded for recalculation of mediation sanctions.

HOOD, J., concurred.

JANSEN, P.J. *(dissenting in part).* I respectfully dissent from part v of the majority opinion regarding mediation sanctions. I would find that the trial court did not abuse its discretion in not including attorney fees for work performed during the first trial. Therefore, I would affirm the trial court's award of sanctions under MCR 2.403(O).

Whether a party is entitled to sanctions and the amount of actual costs are to be determined by the trial court within its discretion. *Dean v Tucker,* 205 Mich App 547, 551; 517 NW2d 835 (1994). While it is correct that actual costs include a

"reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the mediation evaluation," MCR 2.403(O)(6)(b), the cases cited by the majority do not support the proposition that plaintiffs are entitled to attorney fees as part of the meditation sanctions for work performed for the first trial.

In *Keiser v Allstate Ins Co*, 195 Mich App 369; 491 NW2d 581 (1992), the mediation award was in the plaintiff's favor, which the defendant accepted and the plaintiff rejected. A jury returned a verdict for the plaintiff in an amount greater than the mediation evaluation. This Court reversed the jury's verdict, ruling that the trial court erred in denying the defendant's motion for a directed verdict. The defendant sought meditation sanctions pursuant to MCR 2.403(O). This Court held that it is the ultimate verdict that the parties are left with after appellate review is complete that should be measured against the mediation evaluation to determine whether sanctions should be imposed on a rejecting party pursuant to MCR 2.403(O). *Keiser, supra,* pp 374-375. Thus, because the defendant won on appeal, the defendant was entitled to mediation sanctions.

In *Michigan Basic Property Ins Ass'n v Hackert Furniture Distributing Co, Inc,* 194 Mich App 230, 235; 486 NW2d 68 (1992), this Court only stated that the phrase "necessitated by the rejection" is intended as a temporal demarcation to permit recovery of reasonable attorney fees incurred after mediation is rejected, but not before. This Court further noted that the losing party should not be forced to pay for litigation hours expended through no fault of its own. *Id.,* p 236.

Because *Keiser* indicates that it is the *ultimate* verdict that the parties are left with that should

be measured against the mediation evaluation, I do not agree that *Keiser* supports the majority's holding. Therefore, I would compare the outcome of the second trial to the mediation evaluation to determine the mediation sanctions that plaintiffs are entitled to in this case. It is patently unfair to force defendant to pay attorney fees as mediation sanctions for the first trial where the defendant successfully sought and received a new trial. The second trial was not necessitated by rejection of the mediation evaluation; rather, it was necessitated by an error in the proceedings of the first trial.

The mediation sanction rule should not be applied in such a manner as to penalize parties for successfully seeking a new trial or appellate reversal of the first trial. Accordingly, I would affirm the trial court's ruling not to award attorney fees as part of mediation sanctions for work performed by plaintiffs' attorneys in the first trial.

With respect to the remaining portions of the majority's opinion, I concur.