# STATE OF MICHIGAN

# COURT OF APPEALS

---

BEST WAY EXPEDITING, LLC,

        Plaintiff-Appellant,

v

NAVISTAR, INC,

        Defendant-Appellee,

and

TRI-COUNTY INTERNATIONAL TRUCKS,
LLC,

        Defendant.

UNPUBLISHED
May 3, 2018

No. 335085
Wayne Circuit Court
LC No. 14-008113-CK

---

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this warranty dispute, plaintiff, Best Way Expediting, LLC, appeals the circuit court's orders granting summary disposition to defendant, Navistar, Inc.,[1] of plaintiff's claims for fraud and misrepresentation, breach of express warranties, breach of implied warranties of merchantability, and revocation of acceptance, pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons stated below, we affirm.

## I. STATEMENT OF PERTINENT FACTS AND PROCEEDINGS

The underlying lawsuit arises from plaintiff's 2012 purchase of three used 2011 International ProStar trucks with MaxxForce® 11/13 engines manufactured and sold by defendant. Plaintiff purchased two of the trucks from Navistar Used Truck Center and the third truck from Tri-County International Trucks, LLC ("Tri-County"). Conspicuously printed on

---

[1] Tri-County International Trucks, LLC, was initially a co-defendant in this action, but settled with plaintiff in March 2016, and was dismissed from the case by order of the trial court. Accordingly, "defendant" refers only to Navistar.

-1-

each invoice for the trucks sold by defendant was an "as is" clause, stating that the "entire risk as to the quality and performance of this vehicle is with the buyer[,]" and that if the vehicle proved defective, "the buyer and not the manufacturer, distributor or seller assumes the entire cost necessary for servicing or repair." A similar "as is" clause appeared on each truck's retail order form, as did a merger clause stating that by signing the retail orders, the purchaser agreed that the retail order "contains the entire agreement relating to the sale of said property. . . ." Plaintiff's owner signed the retail order forms.

Included in the purchase of each truck were several, still-valid express written warranties. Plaintiff received the remainder of the standard limited warranty for new vehicles, which obligated defendant "to repair or replace" any part of the trucks "that prove[d] defective in material and workmanship in normal use and service . . . for the first 12 months from new vehicle delivery date." Exceptions to the standard limited warranty were listed in a section entitled, "***WHAT IS NOT COVERED***," and included "[l]oss of time or use of the vehicle, loss of profits, inconvenience, or other consequential or incidental damages or expenses." The first page of each standard limited warranty included a statement disclaiming all other warranties, expressed or implied, warranties of merchantability and fitness for a particular purpose, and all other representations to the purchaser. Plaintiff also received extended warranties purchased by the trucks' previous owner for the trucks' electrical systems, heating and air conditioning systems, and the engines. The parties refer to the standard written warranty and the additional extended warranties collectively as defendant's "express warranty." In addition to providing the warranties, defendant also e-mailed the service history records for its trucks to plaintiff approximately 10 days prior to plaintiff's purchase of the trucks.

In 2014, plaintiff filed a four-count lawsuit against defendant, alleging fraud and misrepresentation (Count I), breach of the express warranty (Count II) and the implied warranty of merchantability (Count III), and claiming that it had revoked acceptance of the trucks (Count IV). Plaintiff sought orders requiring defendant to accept return of the trucks, refund the purchase price, pay plaintiff allowable incidental and consequential damages, and indemnify plaintiff with respect to the finance contracts covering the trucks. During the course of the proceedings, the parties stipulated to a protective order to facilitate the exchange of information. The protective order allowed either party to designate as "confidential information" any material that the party in good faith believed contained "non-public, confidential, proprietary, personal, or commercially sensitive information," or information the party was "under a duty to preserve as confidential under an agreement with or other obligation to another person."

On June 1, 2016, defendant filed a motion and supporting brief for summary disposition pursuant to MCR 2.116(C)(10). Defendant argued that it was entitled to summary disposition of Counts I and III because the provisions of the sales and warranty documents foreclosed plaintiff's fraud and misrepresentation claim and its claim for breach of an implied warranty of merchantability. Defendant also contended that the allegedly misrepresentative language in its promotional materials was non-actionable puffery. Defendant asserted that the breach of warranty claim (Count II) failed because it was undisputed that defendant paid for all of the warrantable repairs during the warranty period. Finally, defendant argued that plaintiff's

revocation of acceptance claim (Count IV) failed because plaintiff had made extensive use of the trucks after the alleged revocation and because plaintiff had failed to give notice of its purported revocation of acceptance as required by MCL 440.2607(3)(a).[2]

Responding in opposition to defendant's motion for summary disposition, plaintiff raised three issues not clearly pleaded in its complaint. Plaintiff first asserted that affirmations in defendant's MaxxForce® Diesel brochure about the reliability, technological advances, and low-cost operation of its engines went beyond the "vague and aspirational" and actually created express warranties. Plaintiff next asserted that defendant's express warranty failed of its essential purpose since defendant's "attempts" to repair the trucks did not fulfill its obligation under the warranty to repair or replace defective components. Plaintiff then asserted that defendant failed to extend the express warranty as required under MCL 440.2313b.[3]

The hearing on defendant's motion for summary disposition began on July 14, 2016. After the parties addressed plaintiff's Counts I and II, the trial court took a short recess, which turned into an adjournment when plaintiff's attorney remembered that she had a medical appointment. When the hearing resumed four days later, plaintiff attempted to add to the record for purposes of summary disposition affidavits of plaintiff's owner and of plaintiff's expert witness, along with attachments, as well as a number of additional documents. Defendant moved to strike all of the documents, believing that plaintiff had taken advantage of the four-day adjournment to gather evidence to fill the evidentiary gaps identified at the first day of the hearing. Plaintiff's attorney contended that she was just now introducing the documents because she had filed her response brief remotely and did not know how to file documents under seal in accordance with the protective order. The trial court granted defendant's motion to strike all of the documents, observing that plaintiff cited no authority allowing it to produce without leave at this point documents it could have submitted previously, documents plaintiff had not mentioned in its summary disposition response or at any time during the two weeks since it filed the response.

The hearing continued with the parties addressing plaintiff's assertion that it was entitled to a warranty extension as provided for by MCL 440.2313b, that the warranties failed of their essential purpose, and that it had properly revoked its acceptance of the trucks. With respect to the issue of revocation, the parties focused their arguments on the timeliness of plaintiff's revocation and on whether substantial changes in the condition of the trucks resulting from their depreciation and plaintiff's extensive use of them barred revocation. Prior to the end of the hearing, the trial court asked both parties for additional briefing on the issue, including what damages might be available. In response, plaintiff submitted a brief addressing the law on revocation and the various types of damages available under the Uniform Commercial Code

---

[2] MCL 440.2607(3)(a) states that once a buyer has accepted goods, the buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"

[3] As will be further discussed elsewhere in this opinion, MCL 440.2313b provides for the extension of warranties under certain circumstances.

[UCC]. Defendant submitted a brief arguing, among other things, that it was entitled to a directed verdict on the issue of revocation because the trucks were sold "as is" and, therefore, could not be nonconforming as a matter of law. The trial court held a hearing on the issues raised by these supplemental briefs.

On July 21, 2016, the trial court issued a written opinion and order granting defendant summary disposition of Counts I through III. Regarding plaintiff's claim for fraud and misrepresentation (Count I), the trial court found that the statements in defendant's MaxxForce® Diesel brochure were nonactionable advertising claims and sales puffery, that the brochure was copyrighted two years *after* plaintiff purchased the trucks, and that plaintiff's owner admitted that he did not see or rely on the brochure when he purchased the trucks. The trial court also found that defendant provided evidence showing it had supplied plaintiff with the contact information of the trucks' prior owner and the trucks' warranty histories, as well as affirmative evidence showing why it repurchased the trucks from their prior owner, and that owner's positive comments about defendant.

With regard to plaintiff's allegations of silent fraud, the trial court found that the federal statute plaintiff claimed imposed a duty of disclosure on defendant, § 7541(a) of the Clean Air Act, 42 USC 7401, *et seq.*, was inapplicable in light of plaintiff's pleading. The trial court acknowledged that defendant had been involved in litigation concerning emissions, but stated that plaintiff's complaint did not allege that the trucks at issue had emissions problems and noted that defendant had provided certificates indicating that the trucks comply with the requirements of the Environmental Protection Agency (EPA). Plaintiff had also relied on a complaint filed by the Securities and Exchange Commission (SEC) against defendant's former president and chief executive officer, and a related litigation release, to provide context for its trucks' performance issues. The trial court deemed these documents inadmissible hearsay to the extent that plaintiff offered them to prove that defendant's engineers knew its engines were unfit for normal highway use.[4] Based on the foregoing, the trial court concluded that plaintiff failed to produce admissible evidence sufficient to create a genuine issue of material fact with regard to whether defendant committed fraud or misrepresentation.

The trial court also found defendant entitled to summary disposition of plaintiff's claim for breach of express warranty (Count II), stating:

---

[4] Plaintiff theorized that the problems with the trucks it had purchased from defendant stemmed from defendant's attempt to develop engines that used exhaust gas recirculation (EGR) technology to control emissions. In 2016, the Securities and Exchange Commission (SEC) filed a complaint against Daniel Ustian, defendant's former president and chief executive officer. The gist of the complaint was that from 2010 until 2012, defendant spent millions of dollars in an increasingly and obviously futile attempt to develop engines that used EGR technology to meet the EPA's rigorous emissions standards for over-the-road heavy-duty truck engines, while defendant's president provided false assurances to investors that EPA approval was imminent. Defendant abandoned the use of EGR-only technology in 2012.

Plaintiff has not identified a single repair order in which a repair was attempted but not actually done, nor has Plaintiff identified a single repair order in which the repairs were not done in a workmanlike manner. Instead, Plaintiff merely instructs the Court to See Exhibits E-K. The court will not delve through the hundreds of pages of records to help Plaintiff satisfy its burden to show that repairs reflected therein were not actually made. If any covered repairs were not actually made or not performed in a workmanlike fashion, it was incumbent upon Plaintiff to identify those for the Court.

The court rejected plaintiff's argument that defendant's warranties failed of their essential purpose, noting among other things that plaintiff's response to defendant's motion for summary disposition was devoid of any expert testimony regarding the trucks' service issues, including which repairs were for repeat problems, which were not performed properly, and which took an unreasonable amount of time. The court also rejected plaintiff's contention that defendant refused to make or pay for repairs under the statutory extension of the warranties provided by MCL 440.2313b(a), concluding that plaintiff applied the statute incorrectly. Finally, the trial court found that defendant's express warranty effectively disclaimed merchantability and, therefore, that defendant was entitled to summary disposition of plaintiff's allegations that defendant breached the implied warranty of merchantability (Count III). In an order dated July 25, 2016, the trial court granted defendant summary disposition of plaintiff's claim of revocation of acceptance (Count IV) on the ground that the "as is" clause in the trucks' sales documents barred a claim for revocation as a matter of law.

On August 15, 2016, plaintiff filed a motion for reconsideration of the trial court's orders of July 21, 2016 and July 25, 2016, attaching to its motion what appears to be the affidavits and exhibits it tried to enter into evidence at the July 18, 2016 continuation of the hearing on defendant's motion for summary disposition. The trial court declined to reconsider its order of July 21, 2016, because plaintiff's motion was untimely as to that order, and the court denied plaintiff's motion as to its July 25, 2016 order. The court based its denial on grounds that it had already considered and rejected arguments plaintiff repeated in its motion for reconsideration and that plaintiff advanced additional arguments based on legal theories and facts it could have raised in the initial hearings but did not. This appeal followed.

II. ANALYSIS

A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dillard v Schlussel*, 308 Mich App 429, 444; 865 NW2d 648 (2014). Defendant moved for summary disposition under MCR 2.116(C)(10), which "tests the factual sufficiency of a complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), the court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing evidence." *Dillard*, 308 Mich App at 445. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted). "A genuine issue of material fact exists when the record,

giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich. 177, 183; 665 NW2d 468 (2003).

## B. BREACH OF EXPRESS WARRANTY

Plaintiff does not dispute that defendant performed every repair every time plaintiff brought the subject trucks in for service and that plaintiff accepted the repaired trucks and put them back on the road after each repair. Instead, plaintiff argues that none of the repairs addressed the real problem, which was the trucks' allegedly defective engines, and that because defendant's repairs did not address the assumed defects in the engines, defendant's attempts to repair the trucks did not satisfy its warranty obligations; therefore, defendant's warranty failed of its essential purpose.

Under MCL 440.2719, regarding contractual modification or limitation of remedies, plaintiff was limited to defendant's written warranty providing for repair and replacement of parts defective in material and workmanship during the warranty period, unless the warranty failed of its essential purpose. MCL 440.2719(2); *Severn v Sperry Corp*, 212 Mich App 406, 413; 538 NW2d 50 (1995). Only when a warranty fails of its essential purpose is a buyer "entitled to seek remedies under the standard UCC warranty provisions." *Id*. citing *Price Bros Co v Charles J Rogers Constr Co*, 104 Mich App 369, 374-375; 304 NW2d 584 (1981). For a warranty to fail of its essential purpose, there must be some "unanticipated circumstances" that prevent defendant from providing plaintiff with the remedy to which they agreed. *Severn*, 212 Mich App at 409-414 (seller's inability and unwillingness to repair a cattle feed grinder constituted sufficient evidence to conclude that the defendant's limited written warranty failed of its essential purpose); see also *Kelynack v Yamaha Motor Corp, USA*, 152 Mich App 105, 112-113; 394 NW2d 17 (1986) (the defendant's warranty failed of its essential purpose where the plaintiff's motorcycle became inoperable after three months of ownership and the defendant did not repair it within a reasonable time).

Plaintiff contends that this Court's unpublished decision in *Forster v Navistar Int'l Transp Corp*,[5] governs resolution of the instant case. However, unpublished decisions are not precedentially binding on this Court and "should not be cited for propositions of law for which there is published authority." MCR 7.215(C)(1). Published authority establishes that a repair-or-replace warranty is not breached where the warrantor performs all warrantable repairs. See *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 314; 696 NW2d 49 (2005) (finding no question of material fact with respect to a breach where the defendant performed the required warranty repairs each of the 17 times the plaintiff presented the vehicle for repair during the 30-month lease period). Published authority also establishes that where a defendant performs all warrantable repairs, a plaintiff cannot establish that a repair-or-replace warranty failed of its essential purpose unless the plaintiff presents evidence of repairs that took an unreasonable time

---

[5] *Forster v Navistar Int'l Transp Corp*, unpublished per curiam opinion of the Court of Appeals, issued August 27, 2002 (Docket Nos. 233048, 234995).

and cost the owner the benefit of the bargain. See *Kelynack*, 152 Mich App at 112-113. Plaintiff has failed to indicate any warrantable repair that defendant did not perform, or performed improperly, or did not perform within a reasonable time. Viewing the evidence in the light most favorable to plaintiff, and considering the aforementioned published authority, *Dillard*, 308 Mich App at 445, we conclude that the trial court did not err in granting defendant summary disposition of plaintiff's claim of breach of express warranty.

## C. CREATION OF EXPRESS WARRANTY FROM ADVERTISEMENTS AND OTHER PUBLISHED MATERIALS

Plaintiff next contends that the trial court erred in determining that statements in defendant's MaxxForce® Diesel brochure did not create express warranties. Plaintiff also contends that a statement purportedly from an owner's guide and first relied upon by plaintiff in its motion for reconsideration is sufficiently specific and measurable to create an express warranty.

The creation of express warranties is governed by MCL 440.2313(1), which provides:

(1) Express warranties by the seller are created as follows:

(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. [MCL 440.2313(1).]

Whether the seller provided affirmations of fact, descriptions, or samples relative to the quality and condition of a good that became part of the basis of the bargain are generally fact questions. See MCL 440.2313, Comment 3.[6]

---

[6] Comment 3 explains:

The present section deals with affirmations of fact by the seller, descriptions of goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the

As the statute makes clear, in order for an affirmation, description, or sample to create an express warranty, the affirmation, description, or sample must become "part of the basis of the bargain." The meaning of "basis of the bargain" is not entirely clear, see White & Summers, Uniform Commercial Code (Hornbook Series, 4th ed.), pp 398-404. However, where, as here, it is claimed that language in a catalogue, advertisement, or brochure creates an express warranty, "for such a warranty to arise, 'the catalogue, advertisement, or brochure must have at least been read . . . ." *Id.* at 401, quoting with approval *Interco Inc v Randustrial Corp*, 533 SW2d 257, 262 (Mo App, 1976). In the case at bar, plaintiff's owner testified at his 2015 deposition that, prior to his deposition, he had not seen the brochure that contains the language upon which plaintiff relies to create an express warranty. It defies logic to characterize something a buyer first saw nearly three years after his purchase as part of the basis of the earlier bargain.[7]

Even if plaintiff had received and read the brochure contemporaneously with the purchase, we agree with the trial court that the language from the brochure plaintiff relies on lacks the specificity required to distinguish actionable statements of fact from non-actionable puffery. General expressions of opinion regarding the quality of goods cannot create an express warranty. See *McGhee v GMC Truck & Coach Div*, 98 Mich App 495, 501; 296 NW2d 286 (1980) (explaining that a salesperson's statement to a knowledgeable buyer that a used car is in "good condition" cannot be held to create an express warranty). "[I]t is within normal expectations of commercial dealing for salesmen to 'hype' their products beyond objective proof." *Van Tassel v McDonald Corp*, 159 Mich App 745, 751; 407 NW2d 6 (1987); see *Hayes Constr Co v Silverthorn*, 343 Mich 421; 72 NW2d 10 (1955) (deeming a salesperson's statements that the product would "do the job, that it was miserly in its consumption of fuel, and the maintenance nil" to be puffery). Here, we agree with the trial court that the specific phrases plaintiff claims created express warranties are neither specific nor measurable. Statements such as "Always performing, "enhanced performance," "uptime for you is top of mind for us" are advertising hype. Others, such as "low cost of ownership," "ease of service," "maximum reliability and durability," and "years and years of service," are relative, subjective, and immeasurable.

Plaintiff contends that the statement that defendant's MaxxForce® 11L & 13L engines have an "unsurpassed B-50 rating of 1.2 million miles" (the "B-50 rating statement") is a statement of fact that is concrete and measurable, and thus creates an express warranty. Whether the B-50 rating statement creates an express warranty is unpreserved, plaintiff having introduced

---

agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

[7] Plaintiff argues that pre-sale knowledge of a buyer's product affirmations is not required for such affirmations to become express warranties under MCL 440.2313(1). However, the cases plaintiff cites are inapt, as they involve written warranties delivered with or proximately in time to the goods; they do not involve affirmations or descriptions that become part of the basis of the bargain, and they certainly do not contemplate an express warranty arising from language in a brochure first seen three years after the subject purchase.

the statement in its motion for reconsideration. Accordingly, we need not address it. *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 519; 773 NW2d 758 (2009) (indicating that an appellate court need not address issues first raised in a motion for reconsideration). We "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Nuculovi v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010). None of these conditions is met in the instant case. Further, even if we were to consider the B-50 rating statement, the only thing that plaintiff has established is that the B-50 rating statement exists. Not only do the parties dispute the source of the statement, but plaintiff has not presented, or even alluded to, evidence that would allow a reasonable trier of fact to determine what the statement is actually warranting, that the statement became part of the basis of the bargain, or that the trucks' performance was inconsistent with the statement. Given this absence of evidence on questions essential to the creation of an express warranty, plaintiff cannot create a genuine issue of material fact that the B-50 rating statement created an express warranty.

## D. JUDICIAL NOTICE

Plaintiff argues that the trial court erred by failing to take judicial notice of and apply MCL 440.2313b(a), and by denying plaintiff an opportunity to amend its complaint to plead that it was entitled to a warranty extension under the statute. We disagree.

MCL 440.2313b provides for the extension of express limited warranties as follows:

> An express warranty covering goods sold to a purchaser in this state shall be extended by a period equal to the number of days prescribed in subdivisions (a) and (b), if the cumulative number of days is more than either 10 days or 10% of the number of days of the warranty. A merchant or warrantor shall at the time the goods are repaired give the purchaser a writing stating the time period prescribed in subdivisions (a) and (b):

> (a) The date from which the goods are delivered to the merchant or the warrantor for a warranted repair to the date the purchaser is informed that the necessary repair has been completed.

> (b) The date from which the merchant or warrantor attempts to make a warranted repair to the goods at the purchaser's residence, domicile, or place of business to the date the necessary repairs are completed. In addition to this time period, the number of days preceding the date the merchant or warrantor begins a repair during which the goods were inoperative due to the need for a warranted repair beginning with the date the purchaser notifies the merchant or warrantor in writing that the goods are inoperative and the merchant or warrantor receives the notice.

Plaintiff's contention that the trial court failed to take "judicial notice" of this statute is puzzling, given that the transcript of the hearing on defendant's summary disposition motion shows that the trial court gave plaintiff every opportunity to demonstrate that it was entitled to

the statutory warranty extension, and the trial court addressed the statute's applicability in its written opinion and order.

After defendant met its initial burden of proving that it had performed every warrantable repair, the burden shifted to plaintiff to present documentary evidence establishing the existence of a material factual dispute. *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). Plaintiff's attorney asserted that one truck was out of service for a total of 171 days, another was out for 112 days, and the third was out for 124 days. To support its assertion, plaintiff presented the trial court with a stack of undifferentiated repair orders, apparently expecting the trial court to comb through the orders, separate the warrantable repairs from the non-warrantable repairs, determine how many days the warrantable repairs took, and then do the calculations required by the statute. The trial court indicated that it had reviewed the documents and attempted without success to ascertain which documents were relevant and how to interpret them. The court also repeatedly asked plaintiff to point out that relevant evidence, without success. A party cannot simply provide the trial court with a heap of documents and then expect the court to do the party's work of sifting through the relevant and irrelevant information in order to cull from the data the necessary information that may enable that party to survive a summary disposition motion. This responsibility belongs to the party. See *id*; *Cf. Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) (indicating that a party cannot simply announce its position to a court and expect the court to do the work necessary to support the position). In light of the foregoing, we find no error in the trial court's conclusion that plaintiff simply did not provide the court with the evidence necessary to find that plaintiff was entitled to a statutory warranty extension.

## E. FRAUD AND MISREPRESENTATION

Plaintiff also contends that the trial court erred in dismissing its allegations of affirmative and silent fraud. Plaintiff asserts that a comparison between the trucks' repair histories and statements in defendant's MaxxForce® Diesel brochure regarding the quality and advantages of its engines supports allegations of affirmative fraud. Plaintiff further asserts that defendant committed silent fraud by breaching its duty under the Clean Air Act to disclose to plaintiff the defects in its engines. Again, we disagree.

In order to prove affirmative fraud, plaintiff must present evidence that:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).]

Plaintiff bases its allegation of common-law fraud on the same or similar statements in defendant's MaxxForce® Diesel brochure that it relied upon to argue that the brochure created an express warranty. However, as we have already indicated, we agree with the trial court's assessment of the statements as sales hype or as too relative, subjective, and immeasurable to

constitute affirmative statements of fact. Further, plaintiff provided no evidence of reliance upon the statements in this brochure; to the contrary, plaintiff's owner testified at his deposition that he did not see the brochure prior to purchasing the trucks. Accordingly, plaintiff's allegations of affirmative fraud and misrepresentation fail.

Compared to affirmative fraud, silent fraud, "also known as fraud by nondisclosure or fraudulent concealment . . . requires a plaintiff to set forth a more complex set of proofs." *Id*. at 28. "[S]ilence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty to disclose." *M&D*, 231 Mich App at 29 (emphasis in original).

We agree with the trial court that 42 USC 7541(a) of the Clean Air Act does not impose on defendant a legal duty to disclose the defects plaintiff alleges are inherent in its engines. The federal statute requires manufacturers to warrant that they designed, built, and equipped their new vehicles and engines to conform to the applicable emissions standards and that the vehicles and engines are "free from defects in materials and workmanship" that would cause them to fail to comply with the applicable emissions standards during the engines' useful life.[8] Plaintiff did not allege in its complaint that defendant's trucks had emissions problems and presented no evidence that the EGR system did not meet the EPA's emissions standards. Plaintiff's operative assumption is that the problems with the subject trucks stem from defendant's adoption of an emissions technology that is incompatible with the normal use and conditions of long-haul trucking. However, not only has plaintiff not provided admissible evidence substantiating that assumption, but nothing in 42 USC 7541(a) requires defendant to disclose that the emission system it installed to meet the EPA's standards may impair other performance aspects of its engines. Thus, even if defendant had a duty to disclose, its duty would extend only to disclosures related to the capability of its engines to meet the EPA's emission standards. Defendant's evidence that the trucks meet the EPA's emissions standards is unrebutted.

Plaintiff also argues that a duty to disclose arose from defendant's exclusive knowledge of the test data, documented customer complaints, and numerous lawsuits that put defendant on

---

[8] 42 USC 7541(a), provides in relevant part:

> Effective with respect to vehicles and engines manufactured in model years beginning more than 60 days after December 31, 1970, the manufacturer of each new motor vehicle and new motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that such vehicle or engine is (A) designed, built, and equipped so as to conform at the time of sale with applicable regulations under section 7521 of this title, and (B) free from defects in materials and workmanship which cause such vehicle or engine to fail to conform with applicable regulations for its useful life (as determined under section 7521(d) of this title). In the case of vehicles and engines manufactured in the model year 1995 and thereafter[,] such warranty shall require that the vehicle or engine is free from any such defects for the warranty period provided under subsection (i) of this section.

notice that its engines were fatally flawed. In support of its argument, plaintiff offered the SEC complaint against defendant's former CEO discussed elsewhere in this opinion, a related SEC litigation release, a litigation list, and a summary of e-mails filed under seal. The trial court correctly determined that any allegations made in the SEC complaint regarding the quality or condition of certain of defendant's engines was inadmissible hearsay, and that the SEC litigation release specifically stated that in settling the SEC case, defendant neither admitted nor denied any of the allegations in the SEC complaint. The litigation list is probative of nothing other than the names of plaintiffs, their attorneys, the court in which their action was filed, and the date of filing.

Finally, the e-mails plaintiff summarizes were not part of the record for purposes of the trial court's summary disposition decision. Although plaintiff got the documents into the record through the back door of a motion for reconsideration, the trial court was not obligated to consider the documents because that portion of the motion to which the documents were related was untimely. Further, plaintiff submitted the e-mails under seal and they are not part of the record transmitted to this Court for appellate review. Having not timely presented these documents for the trial court's consideration at any time during the nearly two years that the parties were litigating this case, plaintiff now expects this Court to reverse the trial court's decision on the assumption that documents we have not seen are relevant, admissible, and correctly summarized, and create a genuine issue of material fact. This we decline to do. See *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675, 696 (2003) ("[E]rror requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence.").

## F. REVOCATION

Plaintiff next contends that the trial court erred in dismissing its claim of revocation of acceptance. The gravamen of plaintiff's argument on appeal is that it did not purchase the trucks at issue "as is," but with a warranty, and that even if it did purchase the trucks "as is," that does not negate defendant's contractual promise to repair or replace. We find plaintiff's argument unpersuasive.

MCL 440.2608 states in relevant part that buyers who have already accepted goods may revoke their acceptance under the following circumstances:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

The nonconformity that provides the basis for revocation pertains to the good(s) themselves, not to any party's failure to perform—their actions or inactions—under a warranty.

*Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 81; 719 NW2d 890 (2006). The relevant question is whether the good is nonconforming under the parties' sale contract. *Id*. When goods are sold "as is," "the buyer takes the entire risk as to the quality of the goods." *Id*. (quotation marks and citation omitted). In other words, a vehicle purchased "as is," even if the vehicle has defects, "conforms to the contract and therefore necessarily conforms to the parties' legitimate contractual expectations." *Davis*, 271 Mich App at 82.

As already indicated, the invoices and retail order forms for the subject trucks conspicuously stated that the trucks were sold "as is." Under this Court's reasoning in *Davis*, because plaintiff purchased the trucks "as is," the trucks, "even with the alleged defects, conform[] to the contract and therefore necessarily conform[] to the parties' legitimate contractual expectations." *Id*. Plaintiff's contention that defendant's written repair-or-replace warranty gave rise to expectations that the warranty would operate to give plaintiff trucks that conformed to the contract within a reasonable time after discovery of the trucks' defects does not change our analysis. Plaintiff acknowledges that the "as is" clause relates to the condition and quality of the trucks while the warranties are defendant's promise to provide certain remedies for defects. See *Grosse Pointe Law Firm v Jaguar Land Rover North America, LLC*, 317 Mich App 395, 405-406; 894 NW2d 700 (2016) (observing that "a promise to repair or replace says nothing about the quality of the goods themselves"). Thus, the warranties are defendant's promise to repair any defects and return the trucks to their "as is" condition, not to make the trucks better than they were when plaintiff purchased them. Plaintiff does not dispute that defendant performed every warrantable repair during the warranty period and has not argued that the repairs failed to return the trucks to their "as is" condition. Based on the foregoing, we conclude that the trial court did not err in determining that plaintiff's "as is" purchase of the trucks bars its claim that it revoked acceptance of the trucks based on their alleged nonconformity.

## G. DISPARATE TREATMENT

Finally, plaintiff asserts that the trial court abused its discretion by treating defendant more favorably than plaintiff. Specifically, plaintiff argues that the trial court allowed defendant to file a summary disposition motion beyond the scheduling order's cutoff date for dispositive motions, and to file two other briefs, one allegedly without leave, and the other less than an hour before the related hearing.[9] By contrast, the trial court refused to consider for purposes of summary disposition a document that plaintiff had not attached to its brief in opposition to summary disposition, denied plaintiff an *in camera* review of protected documents, and refused to allow plaintiff to introduce new evidence on the second day of the summary disposition hearing.

Disparate treatment involves treating parties in identical circumstances differently. *Thorne v Bell*, 206 Mich App 625, 635-636; 522 NW2d 711 (1994). In *Thorne*, a procedurally

---

[9] The record shows that, not only did the trial court give defendant permission to file its summary disposition motion beyond the scheduling order's cutoff date, but also that defendant filed the other two briefs with the court's permission or at the court's request.

complex case involving multiple causes of action, two counterclaims, and a third-party complaint, the trial court dismissed the Thornes' complaint because they failed to file their witness and exhibit lists in accordance with the scheduling order. *Id*. at 630-631, 634. However, when the same defendant who had won dismissal of the Thornes' complaint moved for dismissal of the complaint filed by third-party plaintiff Little Caesar Enterprise, Inc., (LCE), for the same reason and relying on the same arguments, the trial court denied the motion, thus allowing LCE's complaint to go forward. *Id*. at 635. The court rationalized its ruling by attempting to distinguish between the Thornes and LCE, noting that the latter's failure to comply with the scheduling order was accidental and resulted in little prejudice to the defendant, given that LCE had "revealed its witnesses and exhibits in its pretrial summary." *Id*. On the Thornes' appeal of the trial court's decision, this Court observed that defendants were given as much notice of the Thornes' witnesses and exhibits as they were of LCE's. The Court concluded that "[t]he trial court's disparate treatment of LCE and [the Thornes] under identical circumstances is contrary to our notion of fairness and its ruling with respect to [the Thornes] must be reversed." *Id*. at 636.

The case at bar is distinguishable from *Thorne*. The Thornes and LCE were situated identically relative to the notification they had provided the defendants of their witnesses and trial exhibits and their failure to comply with the trial court's scheduling order for the submission of their witness and exhibit lists. By contrast, plaintiff has not shown how the parties in the instant case were identically situated. Instead, plaintiff asserts that the trial court's disparate treatment consisted of affording "courtesies" to one side that it did not show to the other, that is, that the trial court treated the parties differently by allowing defendant to do certain things while denying plaintiff the opportunity to do certain other, different things. This does not constitute "disparate treatment" as described in *Thorne*. We will not disturb a trial court's exercise of its inherent authority to manage its own docket absent a finding "that there has been a clear abuse of discretion." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016), quoting *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). Plaintiff has not established that the trial court treated the parties differently in identical situations, nor has plaintiff argued that any of the trial court's decisions, taken in isolation, constituted an abuse of discretion. Thus, plaintiff has not shown that the trial court clearly abused its discretion, and is not entitled to reversal of any of the decisions of which it complains.

## III. CONCLUSION

Viewing the evidence in the light most favorable to plaintiff, *Dillard*, 308 Mich App at 445, we conclude that the trial court did not err in granting defendant summary disposition of plaintiff's allegations of fraud and misrepresentation (Count I). Plaintiff's claim of affirmative fraud fails because plaintiff did not present any evidence that plaintiff's owner received, read, or relied on the alleged affirmations and descriptions in defendant's MaxxForce® Diesel brochure when purchasing the subject trucks. Its claim of silent fraud fails because it has not established that defendant had a duty to disclose any alleged defects in its engines. We likewise conclude that the trial court did not err in granting defendant summary disposition of plaintiff's breach of warranty claims (Counts II and III). Plaintiff has not raised a genuine issue of material fact regarding whether defendant properly and timely performed all warrantable repairs under its warranty, whether it was entitled to a statutory warranty extension, or whether defendant's warranty failed of its essential purpose. Finally, we conclude that the trial court did not err in

determining that plaintiff's "as is" purchase of the trucks barred its revocation claim as a matter of law (Count IV).

Given our conclusions as summarized above, we need not address plaintiff's associated derivative arguments, nor will we address defendant's arguments concerning alternative grounds to affirm.

Affirmed.


/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause